**ALLEN KELLER COMPANY,**
Petitioner,

v.

**Barbara Jean FOREMAN,**
et al., Respondents.

No. 09–0955.

Supreme Court of Texas.

Argued Dec. 7, 2010.

Delivered April 15, 2011.

Wade Caven Crosnoe, Jeff D. Otto, Natasha Lynn Barnes Waddell, Catherine Jane Faubion, Thompson Coe Cousins & Irons, L.L.P., Austin, TX, for Allen Keller Company.

Randy Howry, HowryBreen, L.L.P., Sean E. Breen, Howry Breen & Herman, L.L.P., John Eric Carlson, HowryBreen LLP, Austin, TX, for Barbara Jean Foreman.

Jeffrey A. Brannen, Canterbury, Elder, Gooch, Surratt, Shapiro & Stein, P.C., Dallas, TX, for Amicus Curiae Associated General Contractors of Texas, Inc.

Justice LEHRMANN delivered the opinion of the Court.

In this case we are called upon to decide whether a general contractor owed a duty to a motorist who was killed as a result of an allegedly dangerous condition created by the contractor's work. Because Allen

Keller Company was working under a contract that required strict compliance and had no discretion to vary from its terms, we conclude that it had no duty to rectify the condition. In addition, because the premises were not under Allen Keller Company's control at the time of the accident and the condition was known by the property owner, we conclude that Allen Keller Company owed no duty to warn either the public or the property owner. We reverse the judgment of the court of appeals and render judgment in favor of Keller.

## I. BACKGROUND

Gillespie County hired Allen Keller Company to work on a number of road construction projects in the County. The projects were intended to address a variety of problems related to significant flooding that occurred in the area. The particular project germane to this case required Keller to excavate an embankment[1] and to erect a concrete pilot channel next to a one-lane bridge spanning the Pedernales River. The project was designed and engineered by O'Malley Engineers, a San Antonio-based engineering firm.

The contract between Keller and the County contained a number of provisions relevant to our analysis. The contract required Keller to adhere to the engineering specifications produced by O'Malley and provided that Keller's "obligation to perform and complete the Work in accordance with the Contract Documents [was] abso-

lute." The contract further provided that any changes to the contract would be made by the County and O'Malley, not Keller. It also specified that representatives of both the County and O'Malley would periodically visit the work site to assess Keller's progress and its adherence to the design, and there is evidence that the County's representative visited the site nearly every day. It is undisputed that when O'Malley had a representative on the job site, it was acting on behalf of the County as its agent. Finally, the contract provided that upon completion of the project, a representative of O'Malley would inspect the site and certify that Keller had completed the work according to specifications.

The design specifications required Keller to excavate an embankment and pour a concrete pilot channel to drain water from the roadway away from the foundation of the bridge. The County was concerned that water flow around the bridge's foundation would cause it to weaken, thus compromising its integrity. Prior to excavation, there was a space of approximately ten feet between the bridge and the embankment, most of which was spanned by a guardrail that was connected to the bridge. After Keller excavated a portion of the embankment to erect the pilot channel, as called for by the engineering plans,[2] the gap between the end of the guardrail and the embankment was widened by at least ten feet. The contract specifications

---

1.  As we note below, the design appended to the Foremans' response to Keller's motions for summary judgment depicts a five-foot-wide channel buttressed on either side by five-foot-wide footprints constructed of cement stabilized earthfill.

2.  The Foremans contend that the design specifications did not call for excavation of the embankment. We disagree. In their response to Keller's summary judgment mo-

tions, the Foremans appended two documents created by O'Malley depicting, in detail, the location, grade, and other specifications for the concrete channel. The document depicting a cross-section of the concrete channel clearly shows that in addition to the five-foot-wide concrete channel, Keller was also required to construct five-footwide concrete stabilized earthfill footprints on either side of the channel.

did not include extending the guardrail. A local resident compared the gap and the concrete pilot channel running into the river to a boat ramp.

In June 2003, at the conclusion of Keller's work on the span, and after a representative of O'Malley certified that it was complete according to specifications, the County accepted Keller's work. Some seven months later, Courtney Foreman and two of her friends were traveling towards the one-lane span on Old San Antonio Road before tragedy struck. It was night and the road surface was slick from rain. Although Courtney was the vehicle's registered owner, she sat in the front passenger seat while one of her friends drove. Although the driver was not speeding, he lost control of the vehicle as it rounded a sharp curve leading down to the bridge. Before the driver could regain control of the vehicle, it passed through the gap between the guardrail and the embankment. The vehicle almost stopped at the river's edge, but it slowly rolled into the Pedernales River. Courtney's friends escaped the vehicle as it became immersed. They tried to rescue Courtney, but the vehicle sank and Courtney drowned before they could extract her. The guardrail has since been extended so that it spans the entire width of the gap.

The Foremans filed a wrongful death action against Gillespie County, O'Malley Engineers, Keller, the driver of the vehicle, and Rodriguez Engineering Bridge Inspections.[3] The Foremans settled with the County, O'Malley, and the driver. The Foremans asserted a premises defect theory of liability against Keller based on the fifteen-foot gap between the guardrail and the embankment. Keller moved for summary judgment under Rule 166a(b) and (i) of the Texas Rules of Civil Procedure, arguing that it owed no duty to Courtney Foreman and that its actions were not the proximate cause of her death. The trial court granted summary judgment without specifying which of Keller's motions it was granting.

The court of appeals reversed the trial court's summary judgment on several grounds. 343 S.W.3d 428, 433. The court held that Keller was not entitled to summary judgment on the ground that it owed no duty because its Rule 166a(b) motion for summary judgment failed to "address whether it created a dangerous condition." *Id.* at 431. It further held that Keller was not entitled to a Rule 166a(i) summary judgment because it was foreseeable that a motorist might "deviate[ ] from the roadway in the ordinary course of travel and while driving with reasonable care." *Id.* at 432. The court of appeals then held that the Foremans presented sufficient evidence to raise a question of fact to support their claim that Keller created a dangerous condition at the job site. *Id.* at 433. Finally, the court of appeals held that Keller had not established as a matter of law that it did not proximately cause the accident that led to Courtney's death. *Id.* at 433. We granted Keller's petition for review. 53 Tex.Sup.Ct.J. 1173, 1174 (September 20, 2010).

## II. DUTY

### A. The court of appeals' rationale

■ The sole issue before us is whether, under the circumstances presented, Keller owed a duty of care to prospective motorists in the area, including Courtney Fore-

---

3. The Texas Department of Transportation and the City of Fredericksburg were initially included as defendants in the Foremans' suit; however, both were dropped prior to summary judgment.

man.[4] The court of appeals held that the mere completion of work according to plans, coupled with acceptance of that work by the County, did not relieve Keller of its duty to protect the public from unreasonably dangerous conditions resulting from its work. 343 S.W.3d at 431. The court noted that a contractor who creates a dangerous condition may be liable to members of the public. *Id.* at 431. It held that Keller was not entitled to summary judgment under Rule 166a(b) of the Texas Rules of Civil Procedure because Keller's summary judgment motion did not address whether Keller had created a dangerous condition, implicitly assuming that Keller would owe a duty if it had done so.[5]

In concluding that Keller was not entitled to summary judgment, the court of appeals relied primarily on our decision in *Strakos v. Gehring*, 360 S.W.2d 787 (Tex.1962). The court read *Strakos* to stand for the proposition that a contractor who creates any dangerous condition owes a duty of care to the general public, regardless of the circumstances. 343 S.W.3d at 431. It is true that in *Strakos*, we rejected the accepted-work doctrine. *Strakos*, 360 S.W.2d at 791. Under that doctrine, an independent contractor who has created a dangerous condition on real property is relieved of any duty of care to the public merely because the contractor's work is accepted by the property owner or because the contract did not specifically call for the contractor to make the premises safe. *Id.* at 791–92.

But our decision did not recognize the existence of a duty in all circumstances. To the contrary, we explicitly stated that

> [o]ur rejection of the "accepted work" doctrine is not an imposition of absolute liability on contractors. We simply reject the notion that although a contractor is found to have performed negligent work or left premises in an unsafe condition and such action or negligence is found to be a proximate cause of injury, he must nevertheless be held immune from liability *solely* because his work has been completed and accepted in an unsafe condition.

*Id.* at 790 (emphasis added). While we rejected the owners' acceptance of completed work as an absolute defense, we signaled that general negligence principles apply. *Id.* at 791.

Keller maintains that our decision in *Glade v. Dietert*, 156 Tex. 382, 295 S.W.2d 642, 644 (1956), should control the outcome of this case. While *Glade* is not inconsistent with our decision today, its facts differ significantly and it is not determinative. In *Glade*, a contractor working to construct a sewer line in a residential area bulldozed three trees that were rooted on private property. Unbeknownst to the contractor, the City had neglected to extend its right-of-way to cover the area in

---

**4.** Comment a to section 7 of the Restatement (Third) of Torts: Liability for Physical Harm (Proposed Final Draft No. 1, 2005) discusses a distinction between broad, policy-laden questions of duty and more particularized scope-of-liability inquiries such as proximate cause. The former present questions of law to be decided by courts, while the latter present more individualized issues "regarding the reasonableness of defendants' conduct" to be decided by juries. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 410 n. 5 (Tex.2009); RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL HARM, Chapter 3, § 7 cmt. a (Proposed Final Draft No. 1, 2005). The sole issue presented by the parties here is whether Allen Keller owed a duty to the public. Therefore, we focus on the issue of duty. *See Nabors*, 288 S.W.3d at 410 n. 5.

**5.** Keller's summary judgment motion posed a purely legal question, assuming that it owed no duty even if its work resulted in a dangerous condition on the premises.

which the trees were located. The contractor was sued for trespass. We held that the contractor could not be held liable because it was the City's responsibility to obtain the necessary right-of-way, not the contractor's. *Glade,* 295 S.W.2d at 645. Our holding in *Glade* stands for the limited proposition that, to the extent it operates within the parameters of the governing contract, a contractor is justified in assuming that the government entity has procured the necessary right-of-way. *Glade,* 295 S.W.2d at 645. Accordingly, we consider whether Keller owed a duty in this case.

■ Whether a duty exists is a question of law that is to be decided by the Court. *Del Lago Partners, Inc. v. Smith,* 307 S.W.3d 762, 767 (Tex.2010) (citing *Gen. Elec. Co. v. Moritz,* 257 S.W.3d 211, 217 (Tex.2008)). Any such determination involves the balancing of a variety of factors, "including the risk, foreseeability, and likelihood of injury, and the consequences of placing the burden on the defendant." *Id.* (citing *W. Invs., Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex.2005)).

### B. Duty to rectify

■■ In determining the existence of a duty in this case, we assume, as the parties do, that Keller's work created an unreasonably dangerous condition at the site—a fifteen-foot-gap between the end of the guardrail and the embankment wide enough for a car to pass through. We first consider whether Keller owed a duty to rectify the condition.[6] The presence of an unreasonably dangerous condition, of course, weighs in favor of recognizing a duty. *See id.* The consequences of plac-

ing a duty on Keller to rectify the condition in these circumstances, however, lead us to conclude that Keller owed no such duty. Keller's contract with the County required absolute compliance with the contract specifications, and there is summary judgment evidence that any deviation from the specifications could have jeopardized federal funding for the project. Further, it is undisputed that O'Malley certified Keller's compliance with the contract specifications and the County accepted and paid Keller for the work. While certainly every construction contract implicitly assumes that the contractor will conform to contract specifications, we distinguished in *Strakos* between the duties that may be imposed upon a contractor that has some discretion in performing the contract and a contractor that is left none:

> [T]he contractual provisions ... are not couched in directory wording of that certainty which would require a conclusion that the act of leaving the hole was at the time of its origin and thereafter the act of Harris County and not that of the contractor, as is sometimes the case where a builder merely follows plans and specifications which have been handed to him by the other contracting party with instructions that the same be literally followed.

*Strakos,* 360 S.W.2d at 803 (Suppl. Op. on rehearing). Because the contract in *Strakos* neither required nor forbade the contractor from filling in or marking holes that comprised the dangerous condition, but instead left the choice to the contractor's discretion, the contractor bore a duty to rectify it. *Id.* at 791. In this case, any decision that Keller would have made to

---

**6.** The duty the Foremans envision is not entirely clear, but we believe that they have suggested that Keller could have extended the guardrail. By "rectify the condition," we mean a duty to go beyond or otherwise alter the work called for by the construction documents, as opposed to warning the owner or the public, an alternate theory that we discuss below.

rectify the dangerous condition would have had the effect of altering the terms of the contract. Moreover, because Keller did not own the property, it was not in a position to make decisions about how to make the premises safe.

Amicus curiae the Associated General Contractors of Texas, Inc. maintains that imposing liability upon contractors in Keller's position for what is ultimately a faulty design would substantially increase the costs of construction. The AGC argues that contractors currently rely on the expertise of engineers who design and prepare construction plans and specifications to ensure that the completed work will be safe. They further contend that the imposition of a duty when a contract requires absolute compliance with plans and specifications would require contractors to hire their own professionals to ensure that a completed project will not be unduly dangerous. The AGC's concerns further illustrate the difficulties inherent in imposing the type of duty on a contractor that has been advanced by the Foremans. Given the consequences of recognizing a duty under the circumstances this case presents, we hold that Keller had no duty to rectify the gap contemplated by the designs and specifications.

## C. Duty to warn

We next consider whether Keller owed a duty to make the premises safe by warning of the dangerous condition. The Foremans initially suggested that Keller had a duty to warn the public of the dangers posed by the gap. As a general rule, "a plaintiff must prove that the defendant possessed—that is, owned, occupied, or controlled—the premises where injury occurred." *Wilson v. Tex. Parks and Wildlife Dept.*, 8 S.W.3d 634, 635 (Tex.1999) (per curiam) (citing *City of Denton v. Page*, 701 S.W.2d 831, 835 (Tex.1986)). So long as a general contractor maintains con-

trol over the construction site, it is "charged with the same duty as an owner or occupier." *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex.1985) (internal citations omitted). While Keller was in control of the property during construction, Keller did not own the property or the highway right-of-way, and was not in a position to erect permanent signs or other devices to warn the public of the gap. *See, e.g., Allen v. Va. Hill Water Supply, Corp.*, 609 S.W.2d 633, 635–36 (Tex.Civ.App.-Tyler 1980, no writ) (placing a structure on another's property without permission may constitute trespass).

At oral argument, however, the Foremans' counsel urged us to recognize a duty on Keller's part to warn the County of the condition. We have never held that a contractor may owe a duty to warn a premises owner of a danger on the premises owner's own property. In this case, the County had a representative on the site nearly every day, and representatives of the engineer also frequently visited it. Consequently, the County was aware of conditions at the site. Keller was a contractor, not an engineer, and its work was certified by the engineer before it left the project site. Keller had vacated the premises more than four months before the accident occurred. Accordingly, Keller had no duty to warn of the danger presented by conditions at the site.

## III. CONCLUSION

Under the circumstances presented, Keller owed no duty to rectify the site conditions or to warn of them. Accordingly, we reverse the judgment of the court of appeals and render judgment in favor of Keller.