**Reversed and Dismissed and Opinion Filed June 29, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-01431-CV**

**TOWN OF HIGHLAND PARK, Appellant**
**V.**
**TIFFANY RENEE MCCULLERS, ET AL., Appellees**

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-08709**

## OPINION

Before Chief Justice Burns, Justice Pedersen, III, and Justice Goldstein
Opinion by Justice Pedersen, III[1]

This is a tragic case. Appellees sued, among other defendants, the Town of

Highland Park, Texas (the "Town") asserting negligence and premises liability

claims in connection with the death of Officer Calvin Marcus McCullers. The Town

filed a plea to the jurisdiction, which the trial court denied. After reviewing the

parties' briefs and the record, we reverse the trial court's orders denying the Town's

---

[1] The case was submitted to and oral argument held before a panel consisting of Chief Justice Burns, Justice Pedersen, III, and Justice Evans. Justice Goldstein succeeded Justice Evans on January 1, 2021. Justice Goldstein did not participate in oral argument but—having reviewed the briefs and the record before this court—participates in this opinion.

plea to the jurisdiction. We dismiss Appellees' claims against the Town for want of jurisdiction.

## I.  BACKGROUND

### A. July 4–5, 2016

At times, the Town's Department of Public Safety (Town DPS) provides and coordinates opportunities for peace officers to perform extra duty work at the request of the Town's residents and property owners. On July 4, 2016, James Morden, a public safety officer with the Town, offered a security service assignment to Southern Methodist University ("SMU") police officer Calvin Marcus McCullers ("Officer McCullers"). Officer McCullers accepted the assignment to guard a private residence located at 4100 St. Johns Avenue (the "Property") that was under construction.[2] The Property is close to the Wycliff Avenue Dam (the "Dam").

Officer McCullers arrived at the Property on July 4, 2016, at 11:24 p.m. and sat post in his vehicle. Sporadic, heavy rain began to fall. At about 12:10 a.m. on July 5, 2016, Officer McCullers backed his car to the corner of the residence. Sporadic, heavy rain continued to fall, and Officer McCullers remained in his vehicle. At 12:40 a.m., the National Weather Service issued a severe thunderstorm warning for "Dallas County in North Central Texas." At 1:04 a.m., the National Weather Service issued a flood advisory—"urban and small stream flood advisory

---

[2] It is undisputed that the Town did not directly own the Property during the relevant period.

for . . . Dallas County in North Central Texas." At 1:28 a.m., water spread across the area where Officer McCullers was parked. Officer McCullers moved into the passenger seat of his vehicle. At 1:39 a.m., Officer McCullers called 911 for assistance and spoke with the dispatcher for the Town DPS; at that time, water rose up the sides of his vehicle. Seconds later, Officer McCullers opened the passenger door and stepped out of the vehicle. Officer McCullers lost his footing, and the water swept him and his vehicle over an embankment at the edge of the Property.

At 1:40 a.m., the Town DPS dispatched a rescue response, but it could not access the Property due to the high, swift water. The Town DPS contacted Dallas Fire Rescue, who immediately sent a swift water rescue team to the Property. The Town DPS reached the Property at about 2:00 a.m. to search for Officer McCullers, but it found no sign of him or his vehicle. At this time, Dallas Police Department performed several helicopter sweeps to search for Officer McCullers and his vehicle but could not find either. In the early afternoon of July 5, 2016, Officer McCullers's vehicle was found submerged in Turtle Creek, south of Stonebridge Drive in Dallas. On August 26, 2016, Officer McCullers's body was recovered nearly three and a half miles downstream of the Property on the bank of the Trinity River.

### B. Procedural History

On July 5, 2018, Appellees filed suit against the Town. Appellees amended their petition to assert tort claims against the Town on the theories of (i) negligence, based on a failure to warn Officer McCullers about the possibility of flooding in

connection with the coordination of the security service assignment on the Property, (ii) premises liability, based on the knowledge of the Dam, thunderstorm warning, and flood advisory creating a dangerous condition, and (iii) negligence, based on the use and condition of the Dam.

The Town filed a plea to the jurisdiction asserting governmental immunity. In February 2019, the Honorable District Judge Gena Slaughter heard this plea to the jurisdiction, which resulted in the parties' conducting additional discovery on jurisdictional issues. The Town thereafter filed a supplemental plea to the jurisdiction, which the Honorable Associate Judge Monica Purdy heard on August 9, 2019.[3] On October 11, 2019, Associate Judge Purdy entered an order denying the Town's plea to the jurisdiction. This appeal followed.[4] On November 11, 2020, we held oral argument on the case, and it was submitted.

On March 26, 2021, our Court created binding precedent in *Hull v. Ocwen Loan Servicing, LLC*, No. 05-20-00731-CV, 2021 WL 1152900, at *1 (Tex. App.— Dallas Mar. 26, 2021, no pet. h.). *Hull* addressed whether an appeal was premature when a party appealed an associate judge's summary judgment order—which was neither a default nor an agreed order—under Texas Government Code § 54A.117.

---

[3] Appellees filed their third amended petition on August 8, 2019.

[4] Texas Civil Practice and Remedies Code section 51.014 permits appeal from a district court's interlocutory order that "grants or denies a plea to the jurisdiction by a governmental unit." TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

*Hull*, 2021 WL 1152900, at *1; *see* TEX. GOV'T CODE ANN. § 54A.117.[5] We held

that, because the associate judge's order was not ratified by the referring court by

signature under Texas Government Code § 54A.116, the appeal was premature.

*Hull*, 2021 WL 1152900, at *3; *see* GOV'T CODE § 54A.116(b).[6]

Here, as in *Hull*, the Town appealed an associate judge's order, which was

neither agreed, a default, nor ratified by the referring court. However, the appellate

timetable does not begin to run on such an order until it has been signed by the

referring court. *Hull*, 2021 WL 1152900, at *1–2. In accordance with *Hull*, we

abated this appeal to afford the parties an opportunity to obtain a signed order by the

referring court. We ordered the district clerk to file a supplemental clerk's record

containing either (i) a copy of the referring court's order or (ii) a written verification

that no order was signed. On June 17, 2021, District Judge Slaughter entered an order

---

[5] Texas Government Code § 54A.117 provides:

> (a) Not later than the 30th day after the date an action is taken by an associate judge, a referring court may modify, correct, reject, reverse, or recommit for further information the action taken by the associate judge.
> (b) If the court does not modify, correct, reject, reverse, or recommit an action to the associate judge, the action becomes the decree of the court.

GOV'T CODE § 54A.117.

[6] Texas Government Code § 54A.116 provides, in pertinent part:

> (b) Except as provided by Subsection (c), *the date an order or judgment by the referring court is signed is the controlling date for the purposes of appeal to or request for other relief from a court of appeals or the supreme court*.

> (c) The date an agreed order or a default order is signed by an associate judge is the controlling date for the purpose of an appeal to, or a request for other relief relating to the order from, a court of appeals or the supreme court.

GOV'T CODE § 54A.116 (emphasis added).

denying the Town's plea to the jurisdiction, and the district clerk filed an according supplemental clerk's record. We reinstated this appeal on June 21, 2021.

## II. ISSUES RAISED

The Town raises four issues on appeal:

1. Whether the trial court lacked subject-matter jurisdiction over Appellees' claims against the Town because Appellees failed to demonstrate a waiver of the Town's entitlement to governmental immunity.

2. Whether the trial court lacked subject-matter jurisdiction over Appellees' premises defect claim because Appellees failed to demonstrate a waiver of the Town's entitlement to governmental immunity.

3. Whether the trial court lacked subject-matter jurisdiction over Appellees' negligence claim based on use or condition of real property because Appellees failed to demonstrate a waiver of the Town's entitlement to governmental immunity.

4. Whether the trial court lacked subject-matter jurisdiction over Appellees' negligence claim based on the Town's coordination of off-duty law enforcement services.

## III. STANDARD OF REVIEW

Subject-matter jurisdiction is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Subject-matter jurisdiction is never presumed and cannot be waived. *Id.* at 443–44. A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action based on lack of subject-matter jurisdiction without regard to the merits of the claim. *Town of Fairview v. Lawler*, 252 S.W.3d 853, 855–56 (Tex. App.—Dallas

2008, no pet.) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)). A trial court's ruling on a plea challenging subject-matter jurisdiction is a question of law and, consequently, reviewed de novo. *City of Dallas v. Redbird Dev. Corp.*, 143 S.W.3d 375, 380 (Tex. App.—Dallas 2004, no pet.) (citing *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998)).

A plea to the jurisdiction may challenge either the pleadings or the existence of jurisdictional facts. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004). Should a plea to the jurisdiction challenge the existence of jurisdictional facts, we consider relevant evidence submitted by the parties, when necessary, to resolve the jurisdictional issues raised. *Id.* at 227. In such case, we are not bound by the plaintiff's factual allegations. *City of Dallas v. Hughes*, 344 S.W.3d 549, 553 (Tex. App.—Dallas 2011, no pet.). This standard mirrors our summary judgment standard under rule 166a of the Texas Rules of Civil Procedure, and it places the burden on the plaintiff to allege facts that affirmatively demonstrate the trial court's jurisdiction. *Miranda*, 133 S.W.3d at 228 (referring to TEX. R. CIV. P. 166a).[7] The governmental unit then has the burden to assert and support its contention, with evidence, that the trial court lacks subject-matter jurisdiction. *City of Dallas v. Heard*, 252 S.W.3d 98, 102 (Tex. App.—Dallas 2008, pet. denied) (citing *Miranda*, 133 S.W.3d at 228). Should the governmental unit meet that

---

[7] "In reviewing a summary judgment, we must accept as true evidence favoring the nonmovant, indulging every reasonable inference and resolving all doubts in the nonmovant's favor." *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 510 (Tex. 1995).

burden, the plaintiff must raise a material fact issue regarding jurisdiction to survive the plea to the jurisdiction. *Id.* (citing *Miranda*, 133 S.W.3d at 228).[8] In our review, we construe the pleadings liberally in favor of the plaintiff and look to the plaintiff's intent. *Id.*

## IV. DISCUSSION

### A. Governmental Immunity

Under the common-law doctrine of sovereign immunity, the state cannot be sued without its consent. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011) (citing *Tooke v. City of Mexia*, 197 S.W.3d 325, 331 (Tex. 2006)). Sovereign immunity and governmental immunity are two related common-law doctrines that protect the government from suit. *Harris Cty. v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018).[9] The purpose of governmental immunity is pragmatic: to shield the public from the costs and consequences of improvident actions of their governments. *Tooke*, 197 S.W.3d at 332. Sovereign immunity deprives a trial court of subject-matter jurisdiction over lawsuits in which the state or certain governmental units

---

[8] If the evidence creates a fact question regarding jurisdiction, the trial court cannot grant the plea, and the fact question will be resolved by the factfinder. *City of Dallas v. Mazzaro*, No. 05-20-00103-CV, 2020 WL 6866570, at *2 (Tex. App.—Dallas Nov. 23, 2020, no pet. h.) (mem. op.). If the relevant evidence is undisputed or fails to raise a fact issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228.

[9] "'Sovereign immunity protects the state and its various divisions, such as agencies and boards, from suit and liability, whereas governmental immunity provides similar protection to the political subdivisions of the state, such as counties, cities, and school districts.'" *Annab*, 547 S.W.3d at 612 (quoting *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011)).

have been sued—unless the state or governmental unit consents to suit. *Miranda*, 133 S.W.3d at 224.

Under the common-law, municipalities like the Town are immune from suit and liability for money damages unless the legislature has clearly and unambiguously waived immunity. *Worsdale v. City of Killeen*, 578 S.W.3d 57, 62 (Tex. 2019). Absent a valid statutory waiver of immunity, a trial court may not assume subject-matter jurisdiction over a suit against a governmental unit. *City of San Antonio v. Tenorio*, 543 S.W.3d 772, 775 (Tex. 2018) (citing *Ryder Integrated Logistics, Inc. v. Fayette Cty.*, 453 S.W.3d 922, 926–27 (Tex. 2015)).

### B. Texas Torts Claim Act

The Texas Tort Claims Act ("TTCA") waives governmental immunity in certain limited circumstances, including for personal injury caused by a condition or use of personal or real property. CIV. PRAC. & REM. § 101.021(2) (providing for waiver of immunity for personal injury or death caused by condition or use of tangible personal or real property). This limited waiver is available only if the claimant complies with statutory notice requirements. *Worsdale*, 578 S.W.3d at 62; *see also* CIV. PRAC. & REM. § 101.101; GOV'T CODE § 311.034 (statutory notice provisions are jurisdictional requirements in all suits against governmental entities). Section 101.101 of the TTCA provides that either formal or actual notice of a claim must precede the filing of any lawsuit against a governmental unit:

(a) A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonably describe:

> (1) the damage or injury claimed;
> (2) the time and place of the incident; and
> (3) the incident.

(b) A city's charter and ordinance provisions requiring notice within a charter period permitted by law are ratified and approved.

(c) The notice requirements provided or ratified and approved by Subsections (a) and (b) do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.

CIV. PRAC. & REM. § 101.101. Thus, to prove each of their claims, Appellees must show either (i) timely submitted presuit notice of their claims to the Town or (ii) the Town had actual notice of their claims.

**Issue One: Whether the trial court lacked subject-matter jurisdiction over Appellees' claims against the Town because Appellees failed to demonstrate a waiver of the Town's entitlement to governmental immunity.**

As to all of Appellees' claims, the Town argues that (i) Appellees did not comply with the TTCA or Town Charter's notice requirements and (ii) the Town had no actual notice of Appellees' claims. We first address the notice requirements under the TTCA.

*i.    Notice Requirements Under TTCA and Town Charter*

Apart from the TTCA requirements, the Town's charter provides that

[t]he Town shall never be liable for any personal injury, whether resulting in death or not, unless the person injured or someone in his behalf, or in the event the injury results in death, the person or persons

–10–

who may have a cause of action under the law by reason of such death injury, shall file a notice in writing with the Town Secretary within thirty (30) days after the same has occurred . . . .

Irrespective of the Town's thirty-day or the TTCA's six-month notice time period, it is undisputed that Appellees did not provide written notice to the Town of their claims within six months of the accident. The record shows the accident occurred on July 5, 2016. The earliest notice of Appellees' claims is a letter to the Town's secretary dated June 5, 2018—stamped received June 8, 2018. Therefore, we agree with the Town that Appellees failed to provide timely notice of their claims under section 101.101(a) and the Town Charter. *See* CIV. PRAC. & REM. § 101.101(a). However, Appellees argue that they were not required to provide written notice of their claims pursuant to section 101.101(c). *See* CIV. PRAC. & REM. § 101.101(c). We next discuss this assertion.

### ii.     *Actual Notice of Claims*

For a governmental unit to have actual notice, it must have knowledge of (1) a death, injury, or property damage; (2) the governmental unit's fault that produced or contributed to the death, injury, or property damage; and (3) the identity of the parties involved. *Tenorio*, 543 S.W.3d at 776 (citing *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995)).[10] Knowledge that an injury has occurred, standing alone, is

---

[10] Appellees ask us to reject the Texas Supreme Court's interpretation of the TTCA notice requirement from *Cathey*—the three-part test discussed above, which includes as a second element "the governmental unit's fault that produced or contributed to the death, injury, or property damage." *Cathey*, 900 S.W.2d at 341. Citing Justice Boyd's concurrence in *Worsdale*, Appellees assert that the *Cathey* decision language contradicts the legislative intent of the TTCA and fundamental judicial principles.

not sufficient to put a governmental entity on actual notice as required under the TTCA. *Id.* (the governmental entity must have same knowledge it would have received under written notice provision). It is apparent from the record that the Town met the first and third elements for having actual notice of Appellees' claims. Thus, the only remaining question is whether the Town had knowledge of its own "fault that produced or contributed to the death." *Id.*

Actual notice under section 101.101(c) requires evidence that the government had knowledge of its alleged fault in causing or contributing to the claimant's injury. *See Worsdale*, 578 S.W.3d at 65 ("[T]here must be subjective awareness connecting alleged governmental conduct to causation of an alleged injury to person or property in the manner ultimately asserted."). "The issue is not whether the City *should have* made the connection between injury and responsibility as alleged, but whether the City made the connection or had knowledge that the connection had been made." *Id.*

---

*Worsdale*, 578 S.W.3d at 78 (Boyd, J. concurring) ("[T]he [Texas Supreme] Court and the courts of appeals have struggled to understand and apply *Cathey* ever since."). However, the majority opinion in *Worsdale* specifies:

> *Cathey* has long been settled law, no compelling reason necessitates overturning it, and as we reaffirm today, it was correctly decided in the first instance. The Court is certainly not infallible, and reasonable minds often disagree about how a statute may reasonably be construed. But if we were wrong in *Cathey*, the matter has become so settled that it is now a policy matter for the Legislature to address.

*Worsdale*, 578 S.W.3d at 77 (quotation omitted). Accordingly, we decline Appellees' request that we reject *Cathey*. *See id.* "We are bound by the pronouncements of the Texas Supreme Court on the law until the [C]ourt states to the contrary." *Benser v. Indep. Bank*, 735 S.W.2d 566, 569 (Tex. App.—Dallas 1987), *aff'd sub nom. Allee v. Benser*, 779 S.W.2d 61 (Tex. 1988)

–12–

at 66 (emphasis in original). "This is a fact-based inquiry that may be determined as a matter of law when the facts are undisputed." *Id.* at 77.

Appellees rely on the following facts and circumstances in their assertion that the Town had actual notice of their ultimate claims through the Town's subjective awareness of the following:

(i) Officer McCullers's 911 call;

(ii) the Town DPS's response to the call;

(iii) the Town's participation in searching for Officer McCullers and his vehicle;

(iv) the identification of Officer McCullers's body on August 25, 2016;

(v) the testimony from the Town's engineer, Meran Dadgostar that "after the accident, [the Town Council] wanted to see what it will take to . . . get the road out of the floodplain . . . and [had] questions that we didn't have before";

(vi) minutes from the Town Council's July 11, 2016 meeting, which included discussions of flooding at Wycliff Avenue and the Town's concern with safety;

(vii) an April 15, 2009 Dam Evaluation Report conducted by the Texas Commission on Environmental Quality ("TCEQ"); and

(viii) knowledge of the condition of the Dam and the approaching storm at the time of the incident.

The Texas Supreme Court has stated:

The actual notice requirement is not met just because the governmental unit (1) should have investigated an accident as a prudent person would have, (2) investigated an accident as part of its routine safety

–13–

procedures, or (3) should have known it might have been at fault based on its investigation.

*Tenorio*, 543 S.W.3d at 776. The first four items reveal that the Town (i) acted on and investigated Officer McCullers's request for rescue and (ii) learned of Officer McCullers's death. However, those acts and the knowledge of Officer McCullers's death are not sufficient to establish actual notice under the TTCA. *Id*. Furthermore, Dadgostar's testimony makes no connection between the Town's (i) knowledge or actions and (ii) fault relating to Appellees' claims. Instead, Dadgostar acknowledges

> after the accident, [the Town Council] wanted to see what it will take to—get the road out of the floodplain so the water goes underneath and who is going to be affected, what properties are going to have negative impacts, how much it's going to cost, what is going to happen to city of Dallas . . .

Dadgostar's testimony does not demonstrate that the Town had subjective awareness of Appellees' claims of the Town's fault.

Similarly, the Town Council's July 11, 2016 meeting minutes do not demonstrate that the Town had subjective awareness of Appellees' claims. Although Appellees contend these minutes indicate the Town's knowledge of responsibility, the record of the minutes shows neither specific discussion of Officer McCullers nor any general description or discussion of the accident. The minutes do not include discussion of (i) any claims or fault, (ii) flooding on private property, or (iii) flooding at the Property. Instead, the minutes show the Town Council discussed (i) the flooding "triggered a need . . . to fund an engineering study to assess potential flood

conditions at Wycliff[] Avenue"; (ii) a previous engineering study, which identified costs of improvements; (iii) the need for a forensic review of the flood event; and (iv) potential solutions to and respective consequences of flooding in the area. The minutes further show the Town Council's desire to reduce or prevent flooding in the area and "what can be done to keep people out of this intersection."[11] Thus, the Town Council minutes do not demonstrate subjective awareness of any liability as there was no mention of an injury or death, fault, or the identities of the parties involved.

Appellees contend that the Town knew of the area's general propensity for flooding in combination with the condition of the Dam. However, the record does not reflect that such knowledge had any connection with the circumstances of the instant case or Property on which the accident occurred. Appellees direct us to evidence of an April 15, 2009 TCEQ Dam Evaluation Report conducted on the general location of "North of Saint John's Street and East of Lakeside Drive" citing:

> An [Hydrologic and Hydraulic] analysis should be performed by a [Licensed Texas Professional Engineer] for this structure to confirm safe passage of the required projected flood event [50% of the Probable Maximum Flood] through the service spillway. Depending on the results of the analysis, additional spillway capacity may need to be designed and installed into the structure. Any such dam modification plans must be submitted to our office for review and approval prior to the beginning of any work.

---

[11] The Town argues that on July 11, 2016, the Town Council had no notice of Officer McCullers's death, for Officer McCullers's body was not recovered until August 25, 2016. Appellees' third amended petition states "[the Town] had actual knowledge of Decedent's death and Plaintiffs' loss and damages on or about August 26, 2016, when Decedent's body was recovered and identified."

Appellees contend that this report finds the Dam "hydraulically inadequate." However, the report contains no such finding. Instead, the report states, "It is not known if the dam and its service spillway are hydraulically adequate to pass [a minimum 50% of the Probable Maximum Flood event.]"[12]

Appellees assert the Town knew (i) that any storm greater than a two- or three-year storm would overtop the Dam, thereby constituting an unsafe environment, and (ii) that such knowledge amounted to subjective awareness of their claims. Rick Pyle, the Town's Director of Public Safety, testified that the area around the Property "seem[ed] to be low" and that in his twenty-two years of operations experience, "water was high there, five or six times." However, Appellees conflate the propensity for the dam to flood with the specific flood event, which caused Officer McCullers's death. The dangerous condition was not the dam but rather the flooding caused by the rain on July 4–5 of 2016.

Appellees argue that the Town had actual notice of the flooding, referring to the July 5, 2016 National Weather Service Warnings. However, the record shows Pyle did not recall receiving any weather warnings, and there is no other evidence in the record to indicate that Town personnel received the National Weather Service

---

[12] McCullers further contends the TCEQ Report required the Town to modify the Dam. However, the TCEQ Report did not require the Town to take any action. Dadgostar further disagreed the Dam was required to meet certain criteria regarding the TCEQ Report.

Warnings.[13] Moreover, in *Reyes v. City of Laredo*, the Texas Supreme Court held the City's knowledge of torrential rains did not establish actual knowledge of flooding at a location that had flooded previously during heavy rains—such knowledge of prior flooding was not sufficient to waive governmental immunity. 335 S.W.3d 605, 608–09 (Tex. 2010). Relying on *City of San Antonio v. Rodriguez*, Appellees argue that the Town's actual knowledge of the dangerous condition of the flood may be proven by reasonable inference. 931 S.W.2d 535, 537 (Tex. 1996) (per curiam).[14] However, in *Reyes* the Texas Supreme Court distinguished *Rodriguez*:

> [In *Rodriguez*], the plaintiff, while playing basketball in a recreation center, had slipped in water that had dripped onto the floor from a leak in the roof. Given the "evidence that the person in charge of the recreation center knew of the leaks in the roof and knew that it had been raining," we concluded that, "[d]epending on the position of the leaks above the floor and the amount of rain, the jury might have inferred that the person in charge knew that there would be water on the floor." In other words, evidence of the nature of the leaks and the amount of rain on the roof could make the presence of water on the floor a *virtual certainty*.

*Reyes*, 335 S.W.3d at 609 (emphasis added, internal citations omitted). Here, unlike in *Rodriguez*, the record does not indicate such "virtual certainty" for the Town regarding flooding at the Property area. *See id*. Indeed, the evidence shows Officer

---

[13] However, Pyle testified of a system "where these warnings would be sent to a list of [Town personnel] by e-mail or text or some method of notification." The National Weather Service Warnings did not indicate whether the storm was a two- or three-year storm.

[14] "Circumstantial evidence establishes actual knowledge only when it 'either directly or by reasonable inference' supports that conclusion." *City of Corsicana v. Stewart*, 249 S.W.3d 412, 415 (Tex. 2008) (quoting *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 330 (Tex. 2002)).

McCullers's 911 call was the first time the Town learned of flooding at the Property. Therefore, the instant case is closer to the situation in *Stewart*. 249 S.W.3d at 412 ("City first learned the crossing had flooded when Stewart called 911 for help, which was after the dangerous condition had arisen."). In *Reyes*, the Texas Supreme Court held:

> [In *Stewart*], two children drowned late one night in a rainstorm when the car in which they were riding was swept away by flood waters where the road crossed a creek. The City of Corsicana knew, of course, that it had been raining heavily and that the crossing flooded in such weather, and it had received many calls throughout the night from stranded motorists and flooded homeowners. We concluded that [n]either this evidence nor the inferences arising therefrom raise a fact question on the City's actual knowledge that a dangerous condition existed at or near the crossing at the time of the accident.

*Reyes*, 335 S.W.3d at 609 (emphasis added, internal citations and quotation omitted). Here, similar to *Stewart*, Officer McCullers was swept away by flood waters and neither the evidence nor inferences arising therefrom raise a fact question on the Town's actual knowledge that a dangerous condition existed at or near the Property at the time of the accident. *See Stewart*, 249 S.W.3d at 415. When Officer Morden communicated the assignment at the Property earlier in the day, the weather was dry and sunny. There is no evidence that the Town (or any other entity) closed any roadway near the Property before the Town's attempt to rescue Officer McCullers. The Town learned Officer McCullers was in immediate peril when he called 911, not before. Initially, the Town's officers that responded to Officer McCullers's request for rescue could not access the area due to the high, swift water. The rescuing

officers required additional assistance upon arrival at the Property. Lastly, Appellees have not identified any Town official likely to have made the connection between the tragic circumstances of this case and any fault on the part of the Town. The evidence in this case does not reasonably support the inference that the Town actually knew the Property area was flooded on the night of the accident. *See id*. Thus, the record is not sufficient to support an inference of actual knowledge of a dangerous condition at the time it was occurring. *See Stewart*, 249 S.W.3d at 416 (citing *Gonzalez*, 82 S.W.3d at 330).

In their premises liability claim, Appellees assert that the Town had subjective awareness of either a premises defect on its real property or of a negligent condition on its real property that caused Officer McCullers's death. "As a general rule, 'a plaintiff must prove that the defendant possessed—that is, owned, occupied, or controlled—the premises where injury occurred.'" *Allen Keller Co. v. Foreman*, 343 S.W.3d 420, 426 (Tex. 2011) (quoting *Wilson v. Tex. Parks and Wildlife Dept.*, 8 S.W.3d 634, 635 (Tex. 1999) (per curiam)). "[I]f a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property . . . ." CIV. PRAC. & REM. § 101.022(a). Appellees direct us to the Town's limited easement on the west portion of the Property. Without citation to the record, Appellees assert the Town's easement amounts to a "property right." Relying on *Wilson*, Appellees assert the Town "may nevertheless owe a duty of due care if it undertakes to make the premises safe for

–19–

others." *Wilson*, 8 S.W.3d at 635. However, the record shows that (i) the Town had neither a possessory interest nor an ownership interest in the land located within the easement, (ii) the easement did not give the Town authority to control or maintain the land located within the easement, and (iii) the Town had not used the easement for some years before July 5, 2016. Appellees refer to evidence of the Town's "WHEN FLOODED TURN AROUND DON'T DROWN" warning sign in the median at the intersection of St. Johns Drive and Fitzhugh Avenue as evidence that the Town undertook a duty of care to Officer McCullers in the premises liability context.[15] However, the sign relates to a warning on the roadway—neither a warning about nor an act in control of the Property.[16] Thus, there is no evidence that the Town undertook to make its easement, or any other part of the Property, safe for others. *See Wilson*, 8 S.W.3d at 635.

Appellees direct us to *Worsdale* in their argument that the Town had actual notice of their claims. In *Worsdale*, the Texas Supreme Court held the City of Killeen had actual notice of decedents' claims after decedents died in a motorcycle accident caused by a large mound of dirt, which completely blocked an unlit county road in the City of Killeen. *Worsdale*, 578 S.W.3d at 59–60, 66–67. The Texas Supreme Court held:

---

[15] The record shows this sign is adjacent to the Property.

[16] The Town had no duty to warn others regarding the Property. *See Foreman*, 343 S.W.3d at 426 (holding that a party that does not own or control a property at the relevant time "was not in a position to make decisions about how to make the premises safe" and "was not in a position to erect permanent signs or other devices to warn the public of [an alleged dangerous condition]").

[A]lmost immediately after the accident, the City was subjectively aware of allegations that (1) the road condition and the absence of warning signs were contributing factors to the accident and (2) the City was responsible for maintaining the road.

. . . .

Well within section 101.101's six-month notice deadline, the City knew of allegations that it was responsible for maintaining a road and that the failure to maintain the road had been identified as a contributing factor to the injuries that provide the basis for this lawsuit.

. . . .

City of Killeen officials from key departments participated in the investigation of the motorcycle accident, including engineering, street works, and legal.

. . . .

[T]he crash investigation report here and the investigating officer's deposition testimony reveal a much more thorough investigation, demonstrating an effort among various City departments to track down whether the City was charged with maintaining the road and remediating the hazard. The record firmly establishes the City's knowledge connecting its alleged ownership and control of the road to the road conditions identified as contributing to Worsdale's and King's deaths.

*Worsdale*, 578 S.W.3d at 66–67. However, there are several distinctions between *Worsdale* and the instant case. Unlike *Worsdale*, the accident here occurred on private property—not owned, maintained, or controlled by the Town. Apart from the Town DPS investigation and report describing the rescue and recovery, there was no further investigation focused on the Town's responsibility for Officer McCullers's injury or death. The Town did not recognize that Officer McCullers was injured or died on Town property. The Town made no statements attributing Officer McCullers's death or injuries to the Town's conduct or omission. There was no participation by the Town's attorney. Unlike *Worsdale*, the record does not firmly

–21–

establish the Town's knowledge connecting the Property and other conditions as contributing to Officer McCullers's death. *See Worsdale*, 578 S.W.3d at 67. ("The record firmly establishes the City's knowledge connecting its alleged ownership and control of the road to the road conditions identified as contributing to Worsdale's and King's deaths.").

The Legislature created an actual, not constructive, knowledge standard for waiver of governmental immunity. *See* CIV. PRAC. & REM. § 101.101(c); *Stewart*, 249 S.W.3d at 416. We must conclude that the Town had no subjective awareness, and therefore no actual notice, of Appellees' claims under section 101.101(c). Appellees have neither raised a fact question nor otherwise demonstrated waiver of the Town's governmental immunity. Nevertheless, Appellees argue that they were not required to provide written notice or show actual notice regarding their negligence claims relating to coordination of security services because that claim arises from the Town's performance of a proprietary function. We next discuss this assertion.

### iii.    *Proprietary Functions and Governmental Functions*

Appellees assert that their negligence claim based upon the "Town's coordination of private security guard services is not brought under the TTCA because the claim arises out of the Town's engagement in a proprietary function."[17]

---

[17] Appellees argue that the Town engaged in a proprietary function both when it "coordinated" and "provided" security services. However, Appellees' third amended petition alleges the "the [Town]'s

"A municipality is not immune from suit for torts committed in the performance of its proprietary functions, as it is [immune] for torts committed in the performance of its governmental functions." *Tooke*, 197 S.W.3d at 343. The TTCA defines "proprietary functions" as "those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality." CIV. PRAC. & REM. § 101.0215(b). The TTCA specifies that the "proprietary functions of a municipality do not include those governmental activities listed under Subsection (a)." CIV. PRAC. & REM. § 101.0215(c).

TTCA section 101.0215 enumerates "police and fire protection and control" as the first governmental function. CIV. PRAC. & REM. § 101.0215(a)(1). The TTCA does not further define the relevant terms "police" or "protection," so we give those terms their plain meaning. *Lagow v. Hamon ex rel. Roach,* 384 S.W.3d 411, 416–17 (Tex. App.—Dallas 2012, no pet.) ("If words are not defined, they are given their plain and common meaning") (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)).

The pertinent inquiry is whether coordination of security services in this case falls under the governmental function of "police and fire protection and control."

---

coordination of private security guard services at the Property was a proprietary function." Appellees have not pled their negligence claim on the provision of security services. Therefore, we address their claim only as to the "coordination of private security guard services." Furthermore, even if we were to consider Appellees' negligence claim as relating to the "provision" of security guard services by the Town, our analysis of that issue would be virtually identical to our analysis of the "coordination" of security guard services by the Town.

*See* CIV. PRAC. & REM. § 101.0215(a)(1). Although Appellees frame the circumstances as though the Town coordinated for Officer McCullers to merely provide private security guard services, there is no evidence to show that Officer McCullers was merely a private security officer.

The record shows Officer McCullers served as a police officer at SMU. Earlier in the day on July 4, 2016, Officer McCullers worked the fireworks display at the Dallas Country Club with Officer Morden. Officer Morden's affidavit states that "owners of a residence were interested in hiring officers to perform security work at their residence and contacted the Town about providing officers." Morden then sent communication to "law enforcement agencies" about the security assignment at the Property. After the fireworks display ended, Officer McCullers accepted the security assignment at the Property from Officer Morden.

The record shows that the Town coordinates "officers" on "extra duty services."[18] Pyle testified that the Town did not communicate such security requests to non-licensed peace officers. "For many purposes, an officer is 'on duty 24 hours a day.'" *Polk v. State*, 337 S.W.3d 286, 288 (Tex. App.—Eastland 2010, pet. ref'd) (quoting *Monroe v. State*, 465 S.W.2d 757, 759 (Tex. Crim. App. 1971)). We agree with our sister court in the context of a peace officer that is coordinated to provide security at the request of a resident; such coordination of security does not discharge

---

[18] The record shows coordination of officers is commonly referred as "dispatch."

–24–

police authority. *See Polk*, 337 S.W.2d at 288 ("[A] police officer's 'off-duty' status is not a limitation upon the discharge of police authority." (quoting *Wood v. State*, 486 S.W.2d 771, 774 (Tex. Crim. App. 1972))).[19] It is apparent from the record that Officer Morden coordinated with Officer McCullers in furtherance of police protection at the Property.[20] We conclude that the Town's coordination of Officer McCullers to provide law enforcement services at the Property was an engagement of the governmental function of police protection and not an engagement of a proprietary function. *See* CIV. PRAC. & REM. § 101.0215(a)(1).[21] Thus, because Officer McCullers was engaged in a governmental function, Appellees were required to provide formal or actual notice under the TTCA on their claim for

---

[19] While only persuasive authority, we note that, since submission, the Houston court of appeals held, "Permitting off-duty police officers to work outside jobs providing police services is closely related to the City's governmental function of providing police protection and control in the interest of the general public[]," and that such "services therefore were governmental for purposes of determining whether the City enjoyed governmental immunity on [Plaintiff's] intentional tort claims." *Rogers v. City of Houston*, No. 14-19-00196-CV, 2021 WL 2325193, at *13 (Tex. App.—Houston [14th Dist.] June 8, 2021, no pet. h.).

[20] The Dissent undercuts the significance of Officer McCullers's service at the premises as a police officer—endowed with the privileges, responsibilities, and abilities that a licensed peace officer has earned—compared to a "night-watchman." *See, e.g.*, *CKJ Trucking, L.P. v. City of Honey Grove*, 581 S.W.3d 870, 878 (Tex. App.—Dallas 2019, pet. denied) (holding an off-duty officer's "authority to act was triggered by reasonable suspicion"); *Garza v. Harrison*, 574 S.W.3d 389, 403 (Tex. 2019) ("Peace officers are also expected to stop crime whenever it occurs. . . . [Peace officers] may be required to spring into action at a moment's notice, even while off duty. . . . Under article 14.03(g)(2), once a police officer observes criminal activity, status as a peace officer is activated even if the officer is outside the commissioning employer's geographic jurisdiction.").

[21] Although McCullers requests our consideration of the *Wasson* factors relating to whether the Town acted in a governmental or proprietary capacity, our conclusion that the Town's coordination was an engagement in police protection—the first enumerated governmental function—forecloses such discussion. *See* CIV. PRAC. & REM. § 101.0215(a)(1); *Wasson Interests, Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 150–54 (Tex. 2018) (enumerating factors of whether the City's acts (A) were mandatory or discretionary, (B) involved public or resident benefits, (C) took the act on the State's behalf or the City's behalf, and (D) were related to a governmental function).

negligence in coordination of the Town's security services. *See* CIV. PRAC. & REM. § 101.101. As we have concluded Appellees failed to demonstrate timely formal or actual notice of their claims, we sustain the Town's first issue.

## V.    CONCLUSION

Because of our resolution of the Town's first issue, we do not reach the Town's remaining issues. We reverse the trial court's orders denying the Town's plea to the jurisdiction. We dismiss all of Appellees' claims against the Town for want of jurisdiction.

<table>
<tr><td></td><td>/Bill Pedersen, III//</td></tr>
<tr><td></td><td>BILL PEDERSEN, III</td></tr>
<tr><td>191431f.p05</td><td>JUSTICE</td></tr>
</table>

Goldstein, J. concurring.
Burns, C.J. dissenting.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

TOWN OF HIGHLAND PARK,
Appellant

No. 05-19-01431-CV      V.

TIFFANY RENEE MCCULLERS,
ET AL., Appellees

On Appeal from the 191st Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-18-08709.
Opinion delivered by Justice
Pedersen, III. Chief Justice Burns and
Justice Goldstein participating.

In accordance with this Court's opinion of this date, the trial court's orders denying Appellant's Plea to the Jurisdiction are **REVERSED**, and Appellees' claims against Appellant are **DISMISSED** for want of jurisdiction.

It is **ORDERED** that Appellant Town of Highland Park recover its costs of this appeal from appellees Tiffany Renee McCullers, et al.

Judgment entered this 29th day of June, 2021.