

**MEMORANDUM OPINION**

No. 04-09-00132-CV

**THE CITY OF LAREDO**,
Appellant

v.

Maria Alejandro **REYES**, Individually and As Representative
of the Estate of Karen Reyes, a/k/a Karen Vaquera, Deceased,
Appellee

From the 341st Judicial District Court, Webb County, Texas
Trial Court No. 2008 CVQ 000276-D3
Honorable Elma Teresa Salinas Ender, Judge Presiding

Opinion by:      Sandee Bryan Marion, Justice
Dissenting opinion: Steven C. Hilbig, Justice

Sitting:          Sandee Bryan Marion, Justice
                  Phylis J. Speedlin, Justice
                  Steven C. Hilbig, Justice

Delivered and Filed: September 9, 2009

AFFIRMED IN PART, RENDERED IN PART, REMANDED IN PART

This is an interlocutory appeal from the trial court's order denying The City of Laredo's plea

to the jurisdiction. Because we conclude the evidence before the trial court raised a fact question

regarding the City's actual knowledge of a dangerous condition, we affirm the trial court's denial

of the City's plea as to the appellees' premise defect claim and remand that claim for further

proceedings. We reverse the trial court's denial of the City's plea on the appellees' remaining claims, and we render a dismissal of those claims.

## BACKGROUND

At approximately 3:00 a.m. on June 17, 2007, the vehicle in which the decedent, Karen Reyes, was a passenger drove through flood waters across Century Boulevard in Laredo. The vehicle was swept off the road by the flood waters, resulting in Ms. Reyes's drowning death. Maria Alejandro Reyes, individually and as representative of the Estate of Karen Reyes, a/k/a Karen Vaquera, sued the City of Laredo. Reyes alleged the City's governmental immunity from suit was waived because the condition of the road constituted either a premise defect or a special defect and the City negligently failed to maintain the road and creek-bed. The City moved for dismissal on the ground that the trial court lacked jurisdiction because the roadway was neither a premise defect nor a special defect, and design of roadways and installation of safety features were discretionary acts; therefore, the City retained its immunity from suit. The trial court denied the City's plea, and this appeal ensued.

## STANDARD OF REVIEW

Immunity from suit deprives a trial court of subject matter jurisdiction. *Tx. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). Whether a court has subject matter jurisdiction is a question of law. *Id.* at 226. The plaintiff has the burden to allege facts demonstrating jurisdiction and we construe the pleadings liberally in its favor. *Id.* When a plea to the jurisdiction challenges the existence of jurisdictional facts, as the City's plea does here, the trial court reviews the relevant evidence to determine whether a fact issue exists. *See id.* at 227. If the evidence raises a fact question on jurisdiction, the trial court cannot grant the plea and the issue must

be resolved by the trier of fact. *Id.* at 227-28. If the evidence is undisputed or fails to raise a fact question, the trial court must rule on the plea as a matter of law. *Id.* at 228. We review the trial court's ruling *de novo. Id.* We take as true all evidence favorable to the nonmovant and indulge every reasonable inference in its favor. *Id.*

## PREMISE DEFECT AND SPECIAL DEFECT CLAIMS

A governmental entity is generally immune from suit unless the immunity is waived by the Legislature. *City of Dallas v. Reed*, 258 S.W.3d 620, 622 (Tex. 2008). The Texas Legislature has provided a limited waiver of immunity for tort claims arising from a condition or use of real property "if the governmental unit would, were it a private person, be liable to the claimant." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (Vernon 2005). These claims may arise from either an ordinary premise defect or a special defect, depending on the condition of the property. *See id.* § 101.022 (Vernon Supp. 2008). Whether a condition is a premise defect or a special defect is a question of law. *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 238 (Tex. 1992) (op. on reh'g).

### A.    *Premise Defect - Actual Knowledge*

When there is an ordinary premise defect, the duty owed by the governmental unit is the same duty owed by a private landowner to a licensee, which requires a landowner not to injure a licensee by willful, wanton or grossly negligent conduct and to use ordinary care to warn or make reasonably safe a dangerous condition of which the owner has actual knowledge. *Id.* at 237; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(a) (Vernon Supp. 2008). To establish a waiver of immunity in an ordinary premise defect case, a plaintiff must show the governmental entity had actual knowledge of the dangerous condition at the time of the accident. *City of Corsicana v. Stewart*, 249

S.W.3d 412, 413 (Tex. 2008). "Actual knowledge requires knowledge that the dangerous condition existed at the time of the accident, as opposed to constructive knowledge which can be established by facts or inferences that a dangerous condition could develop over time." *Id.* at 414-15.

In *City of Corsicana*, the Supreme Court stated, "[i]t is undisputed that no direct evidence was offered that the City knew the crossing was flooded prior to the accident" *Id.* at 414. Here, unlike in *City of Corsicana*, Reyes presented the affidavit of Jose Sanchez as proof the City had actual knowledge of the flooding on Century Boulevard in the early morning hours of June 17, 2007.[1] Sanchez stated he has lived on Century Boulevard for about thirty years, he lives "directly next to the creek," and he has a clear view of the creek and of Century Boulevard where it crosses the creek. According to Sanchez, flooding at this location "has been an on-going problem" and this is not the first time "a car or person has been swept into the waters of Chacon Creek during a flood." He also stated as follows:

> On June 17, 2007, I began calling 911 at approximately 12:30 a.m. to advise the police that the water in Chacon Creek was rising and that there was going to be a problem with cars getting swept away if something was not done. I continued to place four or five calls to 911 as the night progressed but the police never showed up. The water level was approximately three and one-half feet high over the roadway which I could tell by the debris line the next day. The water level in my home flooded to over three feet of water that night and my house is well above the creek.

Although Sanchez does not state he saw water rising over Century Boulevard at the time of the accident, circumstantial evidence may establish actual knowledge "when it 'either directly or by reasonable inference' supports that conclusion." *City of Corsicana*, 249 S.W.3d at 415 (quoting

---

[1] The City presented the affidavit of Sylvia Soria, Manager of the Emergency Communications Center for the City of Laredo as evidence it had no actual knowledge of the flooded intersection. Soria stated the City did not become aware of the flooding on or at Century Boulevard until 3:04 a.m., when it received a call that two vehicles were stuck in the flood waters.

*State v. Gonzalez*, 82 S.W.3d 322, 330 (Tex. 2002) and citing to *City of San Antonio v. Rodriguez*, 931 S.W.2d 535, 537 (Tex. 1996)). In *Rodriguez*, involving a suit for injuries suffered as a result of a fall on a wet public basketball court, the Supreme Court rejected the City's contention that there was no evidence of actual knowledge because the evidence showed the City's employee in charge of the building had contemporaneous actual knowledge of the dangerous condition in the vicinity of the hazard because he knew of leaks in the roof and knew that it had been raining. *Id.* The *Rodriguez* Court held that, "[d]epending on the position of the leaks above the floor and the amount of rain, the jury might have inferred that the person in charge knew that there would be water on the floor." *Id.* The Court in *City of Corsicana* characterized its holding in *Rodriguez* as "a direct and reasonable inference [of actual knowledge] from the evidence submitted." *City of Corsicana*, 249 S.W.3d at 415.

Here, Sanchez stated he informed the City, at 12:30 a.m., that the water in the creek was rising and "there was going to be a problem with cars getting swept away if something was not done." Sanchez called 911 four or five more times as the night progressed. We conclude Sanchez's statements, and the reasonable inferences from those statements, were sufficient to raise a fact issue on whether the City had actual knowledge of the dangerous condition at the time of the accident, which occurred not more than two and one-half hours after Sanchez began calling 911. Therefore, the trial court appropriately denied the City's plea.

**B.**     ***Special Defect***

In a special defect liability claim, the duty owed by the governmental unit is that owed by a private landowner to an invitee, which requires an owner to use ordinary care to reduce or eliminate unreasonable risks of harm of which the owner is aware or reasonably should be aware. *Reed*, 258

S.W.3d at 622. Having concluded there is a fact issue on the City's knowledge, we next address whether the water on the roadway was a special defect.

The Texas Tort Claims Act does not define "special defect" but, instead, "likens it to 'excavations or obstructions' that exist 'on' the roadway surface." *Denton County v. Beynon*, 283 S.W.3d 329, 331 (Tex. 2009); TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(b). In *Beynon*, the Texas Supreme Court noted that the Tort Claims Act "itself says nothing about 'unexpected and unusual danger.'" *Beynon*, 283 S.W.3d at 332 n.11. The Court explained that the phrase "unexpected and unusual danger" first appeared in its 1992 opinion in *Payne*, in which the Court observed that excavations and obstructions "present an unexpected and unusual danger to ordinary users of roadways." *Id.* (citing *Payne*, 838 S.W.2d at 238). But, according to the *Beynon* Court, the Tort Claims Act "mandates no second prong, nor does *Payne* engraft one; the statutory test is simply whether the condition is of the same class as an excavation or obstruction." *Id.*

Although "a condition's unexpectedness is not a stand-alone basis for bringing a special-defect claim," *id.* at 332 n.15, whether a condition presents an "unexpected and unusual danger" may describe the class of "obstructions" envisioned by the Tort Claims Act. *Id.* at 332 n.11. Water accumulating on a road caused by persistent rain is neither unexpected nor unusual to ordinary users of roadways. *Villegas v. Tx. Dep't of Transp.*, 120 S.W.3d 26, 33 (Tex. App.—San Antonio 2003, pet. denied); *see also State Dep't of Highways & Pub. Transp. v. Kitchen*, 867 S.W.2d 784, 786 (Tex. 1993) (per curiam) ("Unlike an excavation or obstruction, an icy bridge is something motorists can and should anticipate when the weather is conducive to such a condition."); *but see Miranda v. State*, 591 S.W.2d 568, 570-71 (Tex. Civ. App.—El Paso 1979, no writ) (in suit arising from death of motorist who drowned after he drove his car into two feet of flood waters over a low-water

crossing in predawn darkness and was swept away, court held that plaintiff alleged a special defect by specifically pleading "torrential floodwaters" had "flooded and obstructed the roadway"). We conclude the water on Century Boulevard did not pose a threat to the ordinary users of the road in the same manner as an excavation or obstruction and therefore was not a special defect.

## DISCRETIONARY ACTS

Reyes also alleged the City is liable because it created the hazard that led to the accident by failing to warn of the low water crossing and failing to erect barriers at "a known low water crossing subject to flooding in wet weather." Immunity is not waived for "a claim based on . . . a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit." TEX. CIV. PRAC. & REM. CODE ANN. § 101.056(2) (Vernon 2005). For example, the design of a roadway is a discretionary function involving many policy decisions, and the responsible governmental entity may not be sued for such decisions. *Tx. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002). "Likewise, decisions about installing safety features are discretionary decisions for which the State may not be sued." *Id.* Whether a governmental act is discretionary is a question of law. *State v. Miguel*, 2 S.W.3d 249, 251 (Tex. 1999) (per curiam). Here, we conclude that "regardless of whether the City should have been better prepared to respond, the City is immune from liability for discretionary decisions concerning the expenditure of limited resources for the safety of its citizens." *City of Corsicana*, 249 S.W.3d at 416. Therefore, the City is immune from suit for any failure on its part to warn of the low water crossing or install safety features at the crossing.

**CONCLUSION**

For the reasons stated above, we hold the trial court did not err in denying the City's plea to the jurisdiction on Reyes's premise defect claim and we remand that claim to the trial court for further proceedings. However, because we conclude the water on Century Boulevard was not a special defect and the City is immune from suit for any failure on its part to warn of the low water crossing or install safety features at the crossing, we reverse the trial court's denial of the plea as to those claims and we render a dismissal for lack of jurisdiction on those claims.


Sandee Bryan Marion, Justice