Maria Alejandro REYES, Individually
and as Representative of the Estate of
Karen Reyes, a/k/a Karen Vaquera,
Deceased, Petitioner,

v.

The CITY OF LAREDO, Respondent.

No. 09–1007.

Supreme Court of Texas.

Dec. 3, 2010.

**606** ■

Malcolm C. Halbardier, Attorney at Law, San Antonio, Donato D. Ramos, Donato David Ramos Jr., Law Offices of Donato D. Ramos, P.L.L.C., Laredo, TX, for Maria Alejandro Reyes.

William M. (Mick) McKamie, Charles H. Sierra, Adrian Anthony Spears II, McKamie Krueger, LLP, San Antonio, TX, for City of Laredo.

PER CURIAM.

Maria Reyes sued the City of Laredo for the wrongful death of her fourteen-year-old daughter, who drowned when the van in which she and her family were riding late one night was swept away in flash flood waters where Chacon Creek had overflowed Century Boulevard during a torrential rainstorm. The City asserted governmental immunity and moved to dis-miss for want of jurisdiction. *See Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 639 (Tex.1999) ("[I]mmunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction."). The trial court denied the motion, and the City appealed. *See* TEX. CIV. PRAC. & REM.CODE § 51.014(a)(8) ("A person may appeal from an interlocutory order ... that ... grants or denies a plea to the jurisdiction by a governmental unit...."); *Tex. Dep't of Criminal Justice v. Simons,* 140 S.W.3d 338, 349 (Tex.2004) ("The reference to 'plea to the jurisdiction' is not to a particular procedural vehicle but to the substance of the issue raised. Thus, an interlocutory appeal may be taken from a refusal to dismiss for want of jurisdiction whether the jurisdictional argument is presented by plea to the jurisdiction or some other vehicle, such as a motion for summary judgment.").

■ With exceptions not relevant here, section 101.022(a) of the Texas Tort Claims Act limits the government's duty to prevent injury from premise defects to those of which it has actual knowledge. See TEX. CIV. PRAC. & REM.CODE § 101.022(a) ("Except as provided in Subsection (c) [pertaining to toll roads], if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises."); *State Dep't of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 237 (Tex.1992) ("[A] licensee must prove that the premises owner actually knew of the dangerous condition, while an invitee need only prove that the owner knew or reasonably should have known."). But the limitation does not apply to "special defects such as excavations or obstructions on highways, roads, or streets." TEX. CIV. PRAC. & REM.CODE § 101.022(b); *Den-*

*ton Cnty. v. Beynon,* 283 S.W.3d 329, 331 (Tex.2009) ("Where a special defect exists, the State owes the same duty to warn as a private landowner owes to an invitee, one that requires the State 'to use ordinary care to protect an invitee from a dangerous condition of which the owner is or reasonably should be aware.' " (quoting *Payne,* 838 S.W.2d at 237) (footnotes omitted)). The court of appeals held that a rain-flooded street is not a special defect, 335 S.W.3d 624, 629 (Tex.App.-San Antonio 2009), and we agree. But the court of appeals also held, by a divided vote, that the evidence supports an inference that the City had actual knowledge of the flooded crossing before the incident, *id.* at 628, and with this we disagree. Accordingly, we reverse and render judgment for the City.

■■■ "Whether a condition is a premise defect or a special defect is a question of duty involving statutory interpretation and thus an issue of law for the court to decide." *Payne,* 838 S.W.2d at 238. The Act does not define "special defect," and so, "[u]nder the ejusdem generis rule, we are to construe 'special defect' to include those defects of the same kind or class as the ones expressly mentioned"—that is, excavations and obstructions on roadways. *Cnty. of Harris v. Eaton,* 573 S.W.2d 177, 179 (Tex.1978). *Webster's* defines an excavation as a cavity and an obstruction as an impediment or a hindrance, WEBSTER'S THIRD NEW INT'L DICTIONARY 791, 1559 (1981), but not every hole or hindrance is special; otherwise, the statutory limitation on the government's duty would amount to little. We have described the class of conditions intended by the statute as those which, because of their size or "some unusual quality outside the ordinary course of events," *City of Dallas v. Reed,* 258 S.W.3d 620, 622 (Tex.2008) (per curiam), pose " 'an unexpected and unusual danger to ordinary users of roadways.' " *Texas Dep't of Transp. v. York,* 284 S.W.3d 844, 847 (Tex.2009) (per curiam) (quoting *Payne,* 838 S.W.2d at 238). Thus, for example, a layer of loose gravel on the roadway surface, while a hindrance, is not a special defect because it does not "physically block the road," *York,* 284 S.W.3d at 847, or "present the same type of 'unexpected and unusual danger to ordinary users of roadways' " intended by the statute, *id.* at 848 (quoting *Payne,* 838 S.W.2d at 238). But "a sizeable mound of gravel ... left on the roadway" could be a special defect. *Id.* A two- to three-inch difference in elevation between lanes is not a special defect, *Reed,* 258 S.W.3d at 622 ("[T]here is nothing unusually dangerous about a slight drop-off between traffic lanes in the roadway. Ordinary drivers, in the normal course of driving, should expect these slight variations on the road caused by normal deterioration." (citation omitted)), nor is a sharp turn in a road construction detour, *State v. Rodriguez,* 985 S.W.2d 83, 86 (Tex.1999) (per curiam) ("This detour's sharp turn and other alleged design flaws did not unexpectedly and physically impair a vehicle's ability to travel on the roadway in the same way as a ditch in the road or a ten-inch drop along the shoulder."), nor is a stopped car, *State v. Burris,* 877 S.W.2d 298, 299 (Tex.1994) (per curiam) ("A fully operational motor vehicle, making an illegal movement or momentarily stopped on a highway, is neither a defect in the highway premises nor an excavation or obstruction or similar condition."). But "a ditch across the highway" is a special defect, *Eaton,* 573 S.W.2d at 178–79 ("Witnesses described the hole as oval shaped, varying at places from six to ten inches in depth and extending over ninety percent of the width of the highway. The hole was four feet wide at some points and nine feet wide at others."), as is a large sign lying face down in the middle of the road, *State v. Williams,* 940 S.W.2d 583, 585 (Tex. 1996) (per curiam).

Ice on the road is an obstruction of sorts in that it impedes travel, but in *State Department of Highways and Public Transportation v. Kitchen,* we held that ice on a bridge during freezing, wet weather was not a special defect:

Special defects are excavations or obstructions ... or other conditions which "present an unexpected and unusual danger to ordinary users of roadways." An icy bridge, under the circumstances of this case, is not such a condition. When there is precipitation accompanied by near-freezing temperatures, as in this case, an icy bridge is neither unexpected nor unusual, but rather, entirely predictable. Unlike an excavation or obstruction, an icy bridge is something motorists can and should anticipate when the weather is conducive to such a condition.

867 S.W.2d 784, 786 (Tex.1993) (per curiam); *see also Beynon,* 283 S.W.3d at 332 n. 14 (clarifying that conditions *unlike* excavations and obstructions are not special defects merely because they are unexpected or unusual). A storm-flooded street is no different. Such a condition is not a special defect, and all the courts of appeals that have considered the matter, save one, have agreed. *See City of Austin v. Leggett,* 257 S.W.3d 456, 475 (Tex.App.-Austin 2008, pet. denied); *Tex. Dept. of Transp. v. Fontenot,* 151 S.W.3d 753, 761–62 (Tex. App.-Beaumont 2004, pet. denied); *Villegas v. Tex. Dept. of Transp.,* 120 S.W.3d 26, 32–33 (Tex.App.-San Antonio 2003, pet. denied); *Corbin v. City of Keller,* 1 S.W.3d 743, 747–48 (Tex.App.-Fort Worth 1999, pet. denied). *But see Miranda v. State,* 591 S.W.2d 568, 570 (Tex.App.-El Paso 1978, no pet.) (flood waters constituted obstruction and therefore special defect).

■ Therefore, under section 101.022 of the Act, the City had no duty to warn motorists of flooding on Century Boulevard at Chacon Creek unless it actually knew of the flooding. The City knew that the crossing had flooded before during heavy rains, but "the actual knowledge required for liability is of the dangerous condition at the time of the accident, not merely of the possibility that a dangerous condition can develop over time." *City of Dallas v. Thompson,* 210 S.W.3d 601, 603 (Tex.2006) (per curiam).

The City acknowledges that it learned of the flooding at the accident site from a 911 caller at 3:04 a.m., but by then, Reyes tells us in her brief,

all parties agree that the incident had already occurred. The exact time of the Reyes van being swept away is not clear from the record. What is clear, is that sometime before 3:04 a.m. the water was high enough that the Reyes van was swept into the Chacon Creek Tributary.

Brief for Respondent, at 4. Reyes alleges in her petition that the accident occurred between 3:00 and 3:30 a.m., but we accept her statement of agreement in her brief that the accident occurred before 3:04 a.m. Reyes argues that there is evidence the City knew of the flooding as early as 12:30 a.m.

Reyes submitted an affidavit by a homeowner with a clear view of the accident site, Jose Sanchez, who stated:

I began calling 911 at approximately 12:30 a.m. to advise the police that the water in Chacon Creek was rising and that there was going to be a problem with cars getting swept away if something was not done. I continued to place four or five calls to 911 as the night progressed but the police never showed up. The water level was approximately three and one half feet high over the roadway which I could tell by the debris line the next day.

The court of appeals concluded that "Sanchez's statements, and the reasonable inferences from those statements, were sufficient to raise a fact issue on whether the

City had actual knowledge of the dangerous condition at the time of the accident." 335 S.W.3d at 628.

But from Sanchez's statements, the most one can reasonably infer about what the City knew is that at 12:30 a.m., Chacon Creek was rising, that "there was going to be a problem" at some point, and that the danger persisted throughout the night. From Sanchez's statements one cannot infer that the City ever actually knew Century Boulevard had flooded, or more especially, that it was flooding when the accident occurred. Indeed, since the same crossing had flooded before, Sanchez's affidavit does not suggest that the City knew any more the night of the accident than it would have known in any heavy, protracted rainstorm. Awareness of a potential problem is not actual knowledge of an existing danger. Had there been testimony that a 911 operator received a credible report at about the time of the accident that the crossing had actually flooded and was imperiling motorists, there would have been evidence the City had actual knowledge of a dangerous condition.

We were presented with an almost identical situation in *City of Corsicana v. Stewart*, 249 S.W.3d 412 (Tex.2008) (per curiam). There, two children drowned late one night in a rainstorm when the car in which they were riding was swept away by flood waters where the road crossed a creek. *Id.* at 413. The City of Corsicana knew, of course, that it had been raining heavily and that the crossing flooded in such weather, and it had received many calls throughout the night from stranded motorists and flooded homeowners. *Id.* at 414. We concluded that "[n]either this evidence nor the inferences arising therefrom raise a fact question on the City's actual knowledge that a dangerous condition existed at or near the crossing at the time of the accident." *Id.* at 415 (citing *State Dep't of Highways & Pub. Transp. v.*

*Gonzalez*, 82 S.W.3d 322, 330 (Tex.2002) (knowledge that signs were often vandalized was not actual knowledge that signs were currently missing)).

We distinguished *City of San Antonio v. Rodriguez*, 931 S.W.2d 535, 537 (Tex.1996) (per curiam). There, the plaintiff, while playing basketball in a recreation center, had slipped in water that had dripped onto the floor from a leak in the roof. *Id.* at 536. Given the "evidence that the person in charge of the recreation center knew of the leaks in the roof and knew that it had been raining," we concluded that, "[d]epending on the position of the leaks above the floor and the amount of rain, the jury might have inferred that the person in charge knew that there would be water on the floor." *Id.* at 537. In other words, evidence of the nature of the leaks and the amount of rain on the roof could make the presence of water on the floor a virtual certainty. In *Stewart*, the evidence of flooding at the low-water crossing did not rise to this level. 249 S.W.3d at 415–16.

Nor does it in this case. The City of Laredo knew Chacon Creek might flood, but the record does not show that it knew the creek had flooded at the time of the accident. One can certainly argue that as a policy matter, the government should be obliged to do more to protect against dangerous conditions on its roadways. But that choice belongs to the Legislature.

Accordingly, we grant the City's petition for review, and without oral argument, TEX.R.APP. P. 59.1, reverse the judgment of the court of appeals and render judgment dismissing Reyes's action with prejudice. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 640–41 (Tex.2004).