**REVERSE and REMAND and Opinion Filed September 21, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00012-CV**

**CITY OF DALLAS, Appellant**
**V.**
**MARCO ANTONIO MONROY, Appellee**

**On Appeal from the County Court at Law No. 4**
**Dallas County, Texas**
**Trial Court Cause No. CC-20-05452-D**

## MEMORANDUM OPINION

Before Justices Schenck, Reichek, and Goldstein
Opinion by Justice Schenck

Appellee Marco Anthony Monroy sued the City of Dallas after he was injured when he fell on a City sidewalk. Monroy alleged he was injured as a result of a hazardous condition that was either a special or a premise defect. The City filed a plea to the jurisdiction asserting immunity under the Texas Tort Claims Act (TTCA). The trial court denied the City's plea to the jurisdiction. In this interlocutory appeal of that ruling, the City urges, in three issues, that the trial court erred in denying its plea, the evidence conclusively established that Monroy was a licensee and the City did not have prior actual knowledge of the allegedly dangerous condition, and the trial court erred in overruling its evidentiary objections. We reverse and remand

with instructions to the trial court to consider Monroy's motion for continuance of the hearing on the City's plea to the jurisdiction. Because all issues are settled in law, we issue this memorandum opinion.

## BACKGROUND

On March 13, 2020, Monroy went for a walk after dinner. While walking on a City sidewalk, Monroy tripped over a concrete lip that had formed by a sunken portion of the sidewalk and then stumbled into a hole on the sidewalk causing him to fall. Monroy contends that either the raised lip in the sidewalk or the hole in the sidewalk or both combined constitute a special defect. The following photograph of the location where Monroy fell, shows there was an uneven section of the sidewalk and a sunken portion ahead of the uneven lip that covered a portion of the left side of the sidewalk.



On December 30, 2020, Monroy filed suit against the City asserting negligence and premises liability claims.[1] Monroy alleged the City knew or should have known the sidewalk posed a tripping hazard. The City answered generally denying Monroy's allegation and asserting a defense of governmental immunity. The City also filed a plea to the jurisdiction claiming Monroy's claims did not fall within the TTCA's limited waiver of immunity. The City asserted the complained of conditions are premise defects of which the City did not have prior actual

---

[1] Monroy's negligence claim is subsumed with his premises liability claim and its governmental immunity has not been waived for a general negligence claim under the TTCA. *See City of Dallas v. Prado*, 373 S.W.3d 848, 855 (Tex. App.—Dallas 2012, no pet.) (holding that because plaintiff injured by premise defect is limited to asserting premise–defect claim as provided by the TTCA, governmental immunity is not waived under the TTCA for general negligence claim); *see also City of Richardson v. Justus*, 329 S.W.3d 662, 665 (Tex. App.—Dallas 2010, no pet.).

knowledge. In support of its plea, the City included the affidavits of Sheila Gray, Michel Bonsu, and Brent Cox.

Gray is the 3-1-1 Configuration Manager for the City. She explained how the 3-1-1 reporting system works. When a dangerous condition is reported, it is entered into the City's Customer Request Management System (CRMS) and is routed to the appropriate department. Gray searched the CRMS records and found the City had not received any calls, reports, or complaints regarding a concrete lip or hole at the location of Monroy's fall during the two year period preceding his fall.

Bonsu is the Manager of the Northeast Service Center and oversees the maintenance activities of the center. The location where Monroy fell is within the center's service area. Bonsu explained that the City's Public Works Department uses Salesforce, a document management program, to maintain records of all requests for service and repairs, complaints, and checks or maintenance performed by the department throughout the City. Bonsu searched the Salesforce database and found there had been no requests for service or repairs, complaints, or checks by the City of the part of the sidewalk about which Monroy complains in the two years preceding his fall.

Cox is the Claims Manager for the City's Office of Risk Management. He oversees notices of claims filed against the City by persons claiming injuries. He searched the City's records for the period of March 13, 2018, to March 13, 2020,

and found that the City had not received any notice of an injury claim during that timeframe that involved the sidewalk at issue here.

In response to the City's plea, Monroy asserted the complained-of condition is a special defect, or alternatively, if the condition is a premise defect the City had actual knowledge of same. For the proposition that the City had actual knowledge of the hole in the sidewalk prior to his fall, Monroy relies on the following response to an open records request.

> Meter services could not find any record of work being performed at the location as well as any pending work orders. Meter Services staff responded to the location to investigate and found what appears to be a hole in the sidewalk that was *possibly* from an old water service or it could be a storm water drain.

(emphasis added). From this statement, Monroy extrapolates that the hole was not created by settlement or erosion occurring over time, but rather by the City itself. Thus, claims Monroy, the City had actual knowledge of same. In addition to the response to the open records request, Monroy submitted images from Google street view spanning a 10 year period, some of which showed there were cones or a barricade near or adjacent to the location where Monroy fell. Monroy claims the cones and barricade depicted had to have been placed by City employees making them aware of the nearby condition about which he complains. Monroy also submitted an affidavit from his attorney attempting to authenticate the Google street view images.

–5–

In reply, to address Monroy's argument concerning the response to his open records request, the City presented the affidavit of Jeff Hadaway, the City's Interim Senior Program Manager for the Dallas Water Utilities Department. Hadaway conducted a search of the City's Systems Applications and Products program, which contains work orders, service requests, or trouble history for the Water Distribution Division, which revealed that there had been no requests for service, complaints, repairs, checks, or maintenance performed on any water service meter or storm water drain located in the sidewalk where Monroy fell until staff investigated the area in response to Monroy's notice of claim. In reply, the City also objected to the Google street view images as they were not properly authenticated and to the affidavit of Monroy's attorney as the disciplinary rules prohibit lawyers from testifying about a contested issue. The trial court sustained the City's objection to the affidavit and overruled its objection to the Google street view images.

The trial court denied the City's plea and this interlocutory appeal followed.

## DISCUSSION

### I. Standard of Review

A plea to the jurisdiction is a dilatory plea in which a party challenges a court's authority to determine the subject matter of the action. *Rawlings v. Gonzalez*, 407 S.W.3d 420, 425 (Tex. App.—Dallas 2013, no pet.). The existence of subject-matter jurisdiction is a question of law; therefore, we review *de novo* the trial court's ruling on a plea to the jurisdiction. *Id.*

A governmental entity's plea to the jurisdiction can be based on pleadings or evidence. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider the relevant evidence submitted by the parties to determine if a fact issue exists. *Id.* at 227.

The standard of review for a jurisdictional plea based on evidence "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228; *City of Dallas v. Prado*, 373 S.W.3d 848, 852 (Tex. App.—Dallas 2012, no pet.). The burden is on the City, as movant, to present evidence sufficient to negate jurisdiction. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 391 (Tex. 2016). If it meets that burden, the burden shifts to Monroy, as the nonmovant, to demonstrate a factual dispute on the jurisdictional issue. *Id.* If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the factfinder. *Id.* at 392. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.*

In determining whether either party satisfied its burden, we take as true all evidence favorable to Monroy, indulging every reasonable inference and resolving any doubts in his favor. *Id.* at 391–92. "Although there is no one test for determining actual knowledge that a condition presents an unreasonable risk of harm, courts

–7–

generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition." *Id.* at 392 (quoting *Univ. of Tex.–Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008) (per curiam)).

## II. Governmental Immunity

The City's plea was based on its assertion of immunity from suit. Governmental immunity protects political subdivisions of the State, including cities, from lawsuits for money damages unless immunity has been waived. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). As relevant here, the TTCA provides a limited waiver of immunity for claims arising from a condition or use of real property. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). The TTCA recognizes potential liability for two types of dangerous conditions of real property, premise defects and special defects. *Id.* § 101.022. The TTCA imposes different standards of care depending on whether the condition is a premise defect or a special defect. *Id.* § 101.022. If a condition is neither a special nor premise defect, no duty is owed and there is no waiver of immunity. *See State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992).

### A. Special Defect

If a claim arises from a special defect, the governmental unit owes the duty that a private person owes to an invitee. *See* CIV. PRAC. & REM. § 101.022(b). "With respect to an invitee, the City owes a higher duty to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition of which the

–8–

City is or reasonably should be aware." *City of Dallas v. West*, No 05-19-01540-CV, 2020 WL 5834299, at \*2 (Tex. App.—Dallas Oct. 1, 2020, no pet.) (mem. op.) (quoting *City of Austin v. Rangel*, 184 S.W.3d 377, 383 (Tex. App.—Austin 2006, no pet.)).

Whether a condition is a special defect is a question of law that we review *de novo*. *Tex. Dep't of Transp. v. Perches*, 388 S.W.3d 652, 655 (Tex. 2012) (per curiam). The TTCA does not define "special defect," but "likens it to conditions 'such as excavations or obstructions on highways, roads, or streets.'" *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010) (per curiam) (quoting Texas Tort Claims Act § 101.022(b)). "A condition must therefore be in the same class as an excavation or obstruction on a roadway to constitute a special defect." *Perches*, 388 S.W.3d at 655. The examples of special defects set forth in the statute itself all present a threat to ordinary users of roadways. *Payne*, 838 S.W.2d at 238. In determining whether a particular condition is like an excavation or obstruction, we consider the following: (1) the size of the condition, (2) whether the condition unexpectedly and physically impairs an ordinary user's ability to travel on the road, (3) whether the condition presents some unusual quality apart from the ordinary course of events, and (4) whether the condition presents an unexpected and unusual danger. *Hayes*, 327 S.W.3d at 116. Most property defects are ordinary-premises defects, not special defects. *Payne*, 838 S.W.2d at 238. The class of special defects contemplated by the statute is narrow. *Perches*, 388 S.W.3d at 655. Not every hole

–9–

or hindrance is special; otherwise, the statutory limitation on the government's duty would amount to little.  *See Reyes v. City of Laredo*, 335 S.W.3d 605, 607 (Tex. 2010).

Here, the defects of which Monroy complains are a concrete lip and a hole in the sidewalk, appearing to measure from a few inches to possibly 5 to 6 inches in height or depth.[2]  The City contends these defects are not in the same class as an excavation or obstruction on a roadway and, thus, cannot be special defects.  Monroy argues to the contrary.  We conclude that the Texas Supreme Court's decisions in *Paper*, *Reed*, *Bernal*, and *Roberts* and this Court's decisions in *Freeman*, *Phelps* and *Justus* are instructive on the issue of whether the elevation changes in this case are special defects and aid our analysis.  *See City of Denton v. Paper*, 376 S.W.3d 762 (Tex. 2012); *City of Dallas v. Reed*, 258 S.W.3d 620 (Tex. 2008); *City of El Paso v. Bernal*, 986 S.W.2d 610 (Tex. 1999); *City of Grapevine v. Roberts*, 946 S.W.2d 841 (Tex. 1997); *City of Dallas v. Freeman*, No. 05-18-00961-CV, 2019 WL 3214152 (Tex. App.—Dallas July 17, 2019, no pet.) (mem. op.); *City of Richardson v. Phelps*, No. 05-18-00753-CV, 2019 WL 2912238 (Tex. App.—Dallas July 8, 2019, no pet.) (mem. op.); *City of Richardson v. Justus*, 329 S.W.3d 662 (Tex. App.—Dallas 2010, no pet.); *see also United Supermarkets, LLC v. McIntire*, 646 S.W.3d 800, 803 (Tex. 2022) (per curiam) (3/4-inch divot in parking-lot pavement did not pose an

---

[2] The parties did not present any evidence of or stipulate to the depth or width of the hole about which Monroy complains.

–10–

unreasonable risk of harm).

In *Paper*, a bicyclist was injured when her bicycle's front wheel encountered a depression or sunken area in a roadway a few inches deep where the city had installed a sewer tap. *Paper*, 376 S.W.3d at 763–64. The bicyclist was pitched over the handlebars, landing on her chin and breaking several teeth. *Id.* at 764. In that case, the supreme court concluded that "the sunken area or pot hole here, *ranging from two inches to a few inches more at its deepest point* and *located in the center of one lane* of traffic is not the excavation or obstruction contemplated by the statute." *Id.* at 765–66 (emphasis added). The sunken area "did not physically impair Paper's ability to travel." *Id.* at 766. And "the sunken area could have been avoided without leaving the roadway or entering the opposing lane." *Id.* (contrasting "an abnormally large hole in the road," that "varied from six to ten inches in depth and was four-to nine-feet wide, extending over ninety percent of the width of the highway[,]" which was a special defect, with "common potholes or similar depressions in the roadway," which are not). Thus, supreme court precedent establishes that a defect that is plainly visible and readily avoidable is not a special defect.

In *Reed*, a motorcyclist was injured when he encountered a two-inch elevation variance on the roadway as he changed lanes. *Reed*, 258 S.W.3d at 621. In that case, the supreme court concluded "[n]ot only is the two-inch drop-off here not in the same kind or class as an excavation or obstruction, there is nothing unusually

–11–

dangerous about a slight drop-off between traffic lanes in the roadway." *Id.* at 622. "Ordinary drivers, in the normal course of driving, should expect these slight variations on the road caused by normal deterioration. Thus, to construe a two-inch drop-off to be within the same kind or class as an excavation or obstruction would 'grossly strain[ ] the definitions of those conditions.'" *Id.* (quoting *Roberts*, 946 S.W.2d at 843).

In *Bernal*, a pedestrian sustained injuries when she tripped on an abraded area of a city sidewalk that was approximately 3 feet by 6 feet in size with a depth of 3 inches, at its lowest point. *Bernal*, 986 S.W.2d at 611. In that case, the supreme court concluded "[a]s a matter of law, the sidewalk's condition was not a special defect" because the eroded place in the flat surface of the sidewalk was no more unexpected and unusual a danger than was the eroded step in *Roberts*. *Id.*

In *Roberts*, a pedestrian lost her balance while walking down steps from an elevated sidewalk toward the curb and stepped into a hole, the size of which was unspecified, in the sidewalk step where the concrete had cracked and crumbled away. *Roberts*, 946 S.W.2d at 842. In that case, the supreme court concluded "[a]s a matter of law, a partially cracked and crumbled sidewalk step is not a defect of the same kind or class as the excavations or obstructions the statute contemplates." *Id.* at 843.

In *Freeman*, we concluded that an elevation difference of three inches in a sidewalk was not a special defect and that elevation changes caused by deterioration

–12–

over time "should be expected and do[] not transform the condition into a special defect." *Freeman*, 2019 WL 3214152, at *4.

In *Phelps*, a bicyclist was injured while traveling in a designated bicycle lane when he encountered a lip or heave in the lane, which ran in the direction in which he was traveling. *Phelps*, 2019 WL 2912238, at *1. The evidence showed that at the time of Phelps's accident, the left side of the bike lane was approximately two inches higher than the right. *Id.* at *3. In that case, this Court concluded, as a matter of law, the approximate two-inch elevation change was not a special defect. *Id.*

In *Justus*, this Court held that a raised and uneven sidewalk with a vertical separation alleged to have been at least three inches was not akin to an excavation or obstruction, nor was it an unexpected or unusual danger to the ordinary sidewalk users and, thus, was an ordinary defect. *Justus*, 329 S.W.3d at 666.

Monroy claims the *Furtado*, *Rangel*, *Chacon* and *Smoker* cases support his position that a hole and a sunken sidewalk are special defects. *See City of Austin v. Furtado*, No. 03-21-00083-CV, 2021 WL 6194365, at *4 (Tex. App.—Austin Dec. 31, 2021, pet. denied) (mem. op.) (sunken portion of sidewalk found to be special defect); *City of Austin v. Rangel*, 184 S.W.3d 377, 384 (Tex. App.—Austin 2006, no pet.) (uncovered water meter box in sidewalk found to be special defect);[3] *City of El Paso v. Chacon*, 148 S.W.3d 417 (Tex. App.—El Paso 2004, pet. denied) (large and

---

[3] *Rangel* was decided before the supreme court's decision in *Reed*. *See Tex. Dep't of Transp. v. Reid*, No. 05-18-01424-CV, 2019 WL 3955777, at *4 (Tex. App.—Dallas Aug. 22, 2019, no pet.) (mem. op.) (calling into question conclusion in *Rangel*).

–13–

gaping hole in sidewalk that previously contained utility pole or traffic control device found to be special defect); *Harris Cty. v. Smoker*, 934 S.W.2d 714, 718–19 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (uncovered storm sewer located alongside road without sidewalk where a pedestrian normally would walk found to be a special defect).

The rule of orderliness compels the Court to adhere to precedents of all higher courts and prior decisions of the Court even regardless of decisions in other courts of appeals.[4] *Mitschke v. Borromeo*, 645 S.W.3d 251, 256–57 (Tex. 2022); *City of Dallas v. Kennedy*, No. 05-19-01299-CV, 2020 WL 3286515, at *3 (Tex. App.—Dallas June 18, 2020, no pet.) (mem. op.). From the controlling authorities, it is evident that variations in public roadways and sidewalks of a few inches, and/or that is not a danger to the ordinary user, are not the same as the excavations or obstructions mentioned in the TTCA. And, in this case, the deteriorated part of the sidewalk could be easily avoided with ample area to traverse the sidewalk on the undamaged side. Thus, we are compelled to conclude that the raised concrete lip and hole on one side of the sidewalk are not akin to excavations or obstructions and thus are not individually, or collectively, special defects. Accordingly, to the extent the trial court denied the City's plea to the jurisdiction on Monroy's assertion the

---

[4] In addition, we note that *Furtado* is also distinguishable from the current case. In that case, the court noted that the depth of the hole causing the fall was not apparent from the angle at which *Furtado* approached it. *Furtado*, 2021 WL 6194365, at *4. In addition, the sunken portion of the sidewalk in *Furtado* was more extensive in width and depth than the hole in this case.

complained of condition was a special defect, it erred in doing so. We next consider whether the jurisdictional evidence presented supports the denial of the City plea on under a premise-defect theory.

## B.    Premise Defect

If a claim arises from a premise defect "the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property." TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(a). That duty requires the City to not injure a licensee by willful, wanton or grossly negligent conduct; the City must use ordinary care to warn a licensee, or to make reasonably safe a dangerous condition of which the City is aware and the licensee is not. *See Sampson*, 500 S.W.3d at 391. *Actual knowledge* of the dangerous condition is required. *Id.* at 392 (citing *State v. Tennison*, 509 S.W.2d 560, 562 (Tex. 1974)) (emphasis added). *Constructive knowledge* of the defect is insufficient. *See id.* (emphasis added).

"Actual knowledge requires knowledge that the dangerous condition existed at the time of the accident, as opposed to constructive knowledge, which can be established by facts or inferences that a dangerous condition could develop over time." *City of Corsicana v. Stewart*, 249 S.W.3d 412, 414–15 (Tex. 2008); *City of Dallas v. Thompson*, 210 S.W.3d 601, 603 (Tex. 2006). Awareness of a *potential* problem is not actual knowledge of an existing danger. *Reyes v. City of Laredo*, 335 S.W.3d 605, 609 (Tex. 2010). In determining whether a landowner, such as the City, has actual knowledge of a dangerous condition, "courts generally consider whether

–15–

the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition." *Aguilar*, 251 S.W.3d at 513; *see also Reed*, 258 S.W.3d at 622–23 (no prior accidents or complaints about road condition contributed to conclusion of no actual knowledge at time of motorcycle accident); *City of Dallas v. de Garcia*, No. 05-20-00636-CV, 2021 WL 777087, at *2 (Tex. App.—Dallas Mar. 1, 2021, no pet.) (mem. op.) (holding testimony stating governmental unit did not receive reports of hazardous condition in two years preceding injury sufficient to demonstrate lack of actual knowledge).

The City challenged Monroy's ability to establish the City had actual knowledge of the alleged defects and, in doing so, presented evidence establishing it lacked actual knowledge of the complained of conditions at the time Monroy was injured. More specifically, the City presented the affidavits of Gray, Bonsu, and Cox, which established the City did not receive any calls, reports, complaints, or claims involving the raised concrete lip or the hole in the sidewalk where Monroy tripped and then fell within the two years preceding Monroy's fall. In addition, the City presented the affidavit of Hadaway establishing there had been no requests for service, complaints, repairs, checks, or maintenance performed on any water service meter or storm water drain located in the sidewalk where Monroy fell prior to his fall. Thus, the City met its initial burden, and the burden shifted to Monroy to demonstrate a fact issue as to whether the City had actual knowledge of the complained of conditions. *See Sampson*, 500 S.W.3d at 391.

Monroy points to no direct evidence of the City's knowledge. Monroy argues the City must have been aware of the dangerous condition because cones and a barricade were placed near the portion of the sidewalk at issue in this case several years before Monroy fell and the City indicated, in response to his open records request, that in investigating Monroy's complaint, staff found a hole in the sidewalk that was *possibly* from an old water service or a storm water drain. From this evidence, Monroy extrapolates that the City must have created the hole into which he stepped, and City employees must have placed the cones and the barricade that are depicted in some of the Google street view images and, thus, asserts Monroy, the City would have been aware of the condition of the sidewalk at issue here.

Although circumstantial evidence can be used to establish actual knowledge, evidence that merely raises a suspicion that a governmental unit had actual knowledge is insufficient. *Id.* at 394; *de Garcia*, 2021 WL 777087, at *2. There is no record evidence suggesting the City, rather than a third party, placed the cones which appear to be placed on the grass around the corner from the location at issue and cones and a barricade blocking a lane of traffic on the street adjacent to the location at issue, near a DART sign. And we cannot reasonably infer the City placed the cones and barricade based solely on the fact that it owned or controlled the property. *See de Garcia*, 2021 WL 777087, at *2 (cannot infer City had actual knowledge of condition created by sign's removal when there was no record evidence the City, rather than third party, removed sign located on sidewalk owned

–17–

by City). Moreover, had a City employee been near the alleged defect erecting a barricade or placing cones, the supreme court has rejected the notion that an employee's proximity to a hazard, without more, constitutes actual notice. *City of Dallas v. Thompson*, 210 S.W.3d 601, 602, 604 (Tex. 2006). As to an unidentified employee's speculation that the hole was *possibly* connected to an old water service or storm water drain, it is not more than a scintilla of evidence that possibility was in fact the case. Proof of a mere possibility will not support a fact issue. *Duff v. Yelin*, 751 S.W.2d 175, 176 (Tex. 1988). When the circumstantial evidence is so slight that any plausible inference is purely a guess, it is in legal effect no evidence. *Lozano v. Lozano*, 52 S.W.3d 141, 148 (Tex. 2001). Thus, we cannot infer the City had actual knowledge of the condition of the sidewalk at the time of Monroy's fall. *See id.*; *see also de Garcia*, 2021 WL 777087, at *2.

Because Monroy failed to point to any evidence suggesting the City had actual knowledge of the sidewalk's alleged dangerous condition at the time of his injury, the City's evidence was sufficient to negate jurisdiction under the TTCA. *See de Garcia*, 2021 WL 777087, at *3; *Kennedy*, 2020 WL 3286515, at *3. Accordingly, we sustain the City's first two issues and pretermit consideration of its third issue addressing the trial court's ruling on its objection to the Google street view images. *See* TEX. R. APP. P. 47.1.

## C. Disposition

In its prayer, the City requests that this Court render an order of dismissal

–18–

because there is a lack of subject matter jurisdiction. In response, Monroy asks that if this Court reverses the denial of the City's plea to the jurisdiction, we remand the case to allow him to conduct jurisdictional discovery.

At the hearing on the City's plea to the jurisdiction, Monroy indicated that he was seeking the continuance to depose someone to substantiate his surmise that where the hole in the sidewalk is located was once a water service meter or storm water drain that the City dug up. The trial court judge indicated that if she were to grant the motion for continuance, she envisioned entering an order that would allow Monroy "to depose one of the two witnesses that submitted an affidavit as an exhibit to the plea to the jurisdiction on the topics of policies and procedures when removing these sort of utilities, the water meter or the storm water drain and any topics that relate to the same." Because the trial court ruled in favor of Monroy on the City's plea, it did not further address Monroy's request for a continuance. We conclude that, in this case, it is appropriate to remand the case for the trial court to consider Monroy's request for additional time to conduct jurisdictional discovery. *See Morris Indus. Inc. v. Trident Steel Corp.*, No. 01-09-01094-CV, 2010 WL 4484351, at *5 (Tex. App.—Houston [1st Dist.] Nov. 10, 2010, no pet.) (mem. op.) (reversing trial court's denial of defendant's special appearance but remanding for further discovery concerning jurisdiction).

## CONCLUSION

–19–

We reverse the trial court's order denying the City's Plea to the Jurisdiction and remand the case to allow the trial court to consider Monroy's motion for continuance requesting jurisdictional discovery.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

220012F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CITY OF DALLAS, Appellant

No. 05-22-00012-CV     V.

MARCO ANTONIO MONROY, Appellee

On Appeal from the County Court at Law No. 4, Dallas County, Texas Trial Court Cause No. CC-20-05452-D.

Opinion delivered by Justice Schenck. Justices Reichek and Goldstein participating.

In accordance with this Court's opinion of this date, the order of the trial court denying the City of Dallas' Plea to the Jurisdiction is **REVERSED** and this cause is **REMANDED** to the trial court to consider appellee's motion for continuance requesting jurisdictional discovery.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 21st day of September 2022.