In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-22-00256-CV
_____

TEXAS DEPARTMENT OF TRANSPORTATION, Appellant

V.

JIMMIE LEE LOFTON, Appellee

On Appeal from the 136th District Court
Jefferson County, Texas
Trial Cause No. D-204,737

**MEMORANDUM OPINION**

In this accelerated interlocutory appeal, the Texas Department of
Transportation (TxDOT) challenges the denial of its "Motion for Traditional and No
Evidence Summary Judgment and to Dismiss for Want of Jurisdiction" in which it
asserted sovereign immunity and requested dismissal of Jimmie Lee Lofton's
personal injury lawsuit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8).[1] In

_____

[1]We note that Jimmie Lee Lofton's name is misspelled throughout the clerk's
record and in the final judgment as Jimmy Lee Lofton.

1

two issues, TxDOT contends the trial court erred by denying its Motion for Traditional and No Evidence Motion for Summary Judgment and To Dismiss for Want of Jurisdiction because (1) the pothole is not a special defect and there is no evidence that TxDOT had actual knowledge of the danger of the pothole when the accident occurred or (2) that the pothole posed an unreasonable risk of harm. TxDOT argues that without such evidence, there is no waiver of sovereign immunity under the Texas Tort Claims Act ("TTCA"), and the trial court is deprived of subject matter jurisdiction. As discussed below, we reverse the trial court's Order and dismiss Lofton's suit for lack of jurisdiction.

## BACKGROUND

In his petition, Lofton alleged that on the night of September 24, 2018, Lofton was riding his motorcycle eastbound in the far right outside lane of Interstate 10 in Jefferson County when he hit an alleged "special defect" in the roadway, which he described as "a previously improperly repaired" pothole and crack in the roadway. As a result of hitting the pothole, he lost control of his motorcycle and suffered multiple injuries. Lofton claimed that he was an "invitee" on property possessed, controlled and maintained by TxDOT. Lofton claimed that TxDOT knew or should have known of the dangerous premises condition, which posed an unreasonable risk of harm. Asserting causes of action for special defect and in the alternative a claim for a premises defect, Lofton alleged that he suffered personal injuries caused by a

2

condition or use of the property and that TxDOT's immunity is waived, making it liable for his injuries and damages.

In its answer, TxDOT raised the affirmative defense of sovereign immunity. The case went to trial, but the jurors were unable to reach a verdict and a mistrial was declared. TxDOT then filed its combined "Motion for Traditional and No Evidence Summary Judgment and to Dismiss for Want of Jurisdiction." In its Motion, TxDOT asserted sovereign immunity against suit and liability, and it requested dismissal of the suit. TxDOT asserted that the condition complained of was not a special defect. It further argued that no evidence exists to show that TxDOT had actual knowledge of the condition, as required to find liability for injuries caused by an ordinary premises defect. TxDOT supported its motion with trial testimony from several witnesses, including: Tiffany Lofton, Lofton's wife; Trooper Kasey Carrier, who investigated the accident; Noel Salac, a TxDOT area engineer; and Todd Dinger, a TxDOT maintenance supervisor. TxDOT also attached photographs Tiffany took the day after the accident and photographs Trooper Carrier took the night of the accident.

In his "Response to Defendant's Motion for Traditional and No Evidence Motion for Summary Judgment and to Dismiss for Want of Jurisdiction," Lofton asserted that evidence at trial showed the condition of the roadway was a special defect or, in the alternative, a premise defect, and that fact issues exist on the issue

3

of "actual knowledge" of a dangerous condition and whether there was an "unreasonable risk of harm." In addition to the trial testimony of the four witnesses, Lofton's supporting evidence included a photograph of the pothole taken by Trooper Carrier, a TxDOT daily activity report for the day after the accident occurred, and the crash report. The trial court denied TxDOT's Motion for Traditional and No Evidence Motion for Summary Judgment and to Dismiss for Want of Jurisdiction.

## STANDARD OF REVIEW

We have jurisdiction to review an interlocutory order in which the trial court "grants or denies a plea to the jurisdiction by a governmental unit[.]" Tex. Civ. Prac. & Rem. Code Ann. §§ 51.014(a)(8); *see* Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(A) (defining governmental unit to include the state and all agencies of the government that constitute the state, including departments). Both a plea to the jurisdiction and a motion for summary judgment are appropriate vehicles to challenge a trial court's subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Sovereign immunity deprives a trial court of subject-matter jurisdiction over suits against the State or certain governmental units unless the State has consented to suit. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004) (citations omitted). The issue in this case is whether the State waived immunity through the limited waiver provided for in the TTCA. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001–.109.

4

Whether a trial court has subject-matter jurisdiction is a question of law reviewed de novo. *See Miranda*, 133 S.W.3d at 226. To invoke the trial court's subject-matter jurisdiction, the plaintiff must allege facts that affirmatively demonstrate that the trial court has jurisdiction to hear the case. *Id.* "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Id.* at 227–28. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, a district court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. If a party challenges the existence of jurisdictional facts, we consider the evidence submitted by the parties to resolve the jurisdictional issue raised. *Id.* at 227 (citation omitted).

A party who seeks a no-evidence summary judgment contends that there is no evidence of one or more elements of a claim on which the other party has the burden of proof at trial. Tex. R. Civ. P. 166a(i). If the nonmovant produces more than a scintilla of evidence that raises a genuine issue of material fact as to the challenged element, summary judgment is improper. *See id.*; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). If reasonable, fair-minded people could differ in their conclusions, there is more than a scintilla of probative evidence. *Chapman*, 118 S.W.3d at 751 (citation omitted).

To prevail on a traditional motion for summary judgment, the movant has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A defendant who moves for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or establish an affirmative defense as a matter of law. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010) (citation omitted); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). Evidence is conclusive only if reasonable minds could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). If the defendant establishes his right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact. *Siegler*, 899 S.W.2d at 197. We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve all doubts in favor of the nonmovant. *Id.*; *see also Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

## ANALYSIS

In two issues, TxDOT argues (1) the pothole is not a special defect and there is no evidence that TxDOT had actual knowledge of the danger of the pothole when the accident occurred or (2) that the pothole posed an unreasonable risk of harm.

6

TxDOT argues that without such evidence, there is no waiver of sovereign immunity under the TTCA, and the trial court is deprived of subject-matter jurisdiction.

"The State of Texas is protected from suits for damages by sovereign immunity, unless waived by statute." *Tex. Dep't of Transp. v. York*, 284 S.W.3d 844, 846 (Tex. 2009) (citations omitted). "Legislative consent to waive sovereign immunity by statute must be by 'clear and unambiguous language,'... and suit can then be brought 'only in the manner indicated by that consent.'" *Id.* (quoting Tex. Gov't Code Ann. § 311.034; *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 (Tex. 2003)). "[W]hen construing a statute that purportedly waives sovereign immunity, we generally resolve ambiguities by retaining immunity." *Wichita Falls State Hosp.*, 106 S.W.3d at 697.

The TTCA provides a limited waiver of immunity, allowing suits against governmental units under certain, narrowly defined circumstances. *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). The TTCA provides that a governmental unit waives governmental immunity from liability for claims "for personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2). The TTCA waives immunity from suit only as expressly provided in the TTCA. *Id.* § 101.025(a); *Miller*, 51 S.W.3d at 587. Stated another way, "the extent

7

of Section 101.025's waiver of immunity from suit is determined by the Act's limits on liability," and the TTCA is "a unique statutory scheme in which the two immunities are co-extensive."

**Premises Defects vs. Special Defects**

The TTCA provides for a limited waiver of immunity for two categories of claims that allege dangerous conditions on real property – premises defects and special defects. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.022. If a claim involves a premises defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property. *Id.* § 101.022(a); *see also State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992). Likewise, if the claim arises from a premises defect on a "toll highway, road, or street, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property." Tex. Civ. Prac. & Rem. Code Ann. § 101.022(c). Under a licensee standard, among other elements, a plaintiff must prove that the governmental unit had actual knowledge of a condition that created an unreasonable risk of harm and that the licensee did not have actual knowledge of that same condition. *York*, 284 S.W.3d at 847; *Payne*, 838 S.W.2d at 237.

If the condition is a special defect, the governmental unit owes the duty that a private person owes to an invitee. Tex. Civ. Prac. & Rem. Code Ann. § 101.022(b); *Payne*, 838 S.W.2d at 237. Under the invitee standard, a plaintiff need only prove

8

that the governmental unit should have known of a condition that created an unreasonable risk of harm. *York*, 284 S.W.3d at 847; *Payne*, 838 S.W.2d at 237. To discharge its duty to keep its premises safe for invitees, the governmental unit must either adequately warn of the dangerous condition or make the condition reasonably safe. *See TXI Operations, L.P. v. Perry*, 278 S.W.3d 763, 765 (Tex. 2009).

Whether a condition is a premises defect or a special defect is a question of law that we review de novo. *York*, 284 S.W.3d at 847 (citation omitted). The Civil Practice and Remedies Code does not define "special defect," but gives guidance by likening special defects to "excavations or obstructions[.]" Tex. Civ. Prac. & Rem. Code Ann. § 101.022(b); *York*, 284 S.W.3d at 847. Thus, the question is whether the condition is of the same kind or class as an excavation or obstruction. *Id.* (citations omitted); *Denton Cty. v. Beynon*, 283 S.W.3d 329, 331 n.11 (Tex. 2009). "A special defect, then, cannot be a condition that falls outside of this class." *York*, 284 S.W.3d at 847 (citations omitted). In determining whether a particular condition is like an excavation or obstruction and therefore a special defect, the Texas Supreme Court has recognized several helpful characteristics, such as: "(1) the size of the condition; (2) whether the condition unexpectedly and physically impairs an ordinary user's ability to travel on the road; (3) whether the condition presents some unusual quality apart from the ordinary course of events; and (4) whether the condition presents an

9

unexpected and unusual danger." *City of Denton v. Paper*, 376 S.W.3d 762, 765 (Tex. 2012) (citation omitted).

In *City of Denton*, the Supreme Court discussed the court of appeals' reasoning that the sunken area in the roadway was not the same as an ordinary pothole which would not be a special defect, because the sunken area had been caused by the City cutting a hole in the street. In other words, the court of appeals reasoning suggested a pothole by itself might not be a special defect, but the same pothole would be a special defect if it was caused by the governmental unit's ineffective repair. *Paper*, 376 S.W.3d at 765. The Supreme Court rejected the reasoning of the court of appeals and stated:

> A condition's quality as a special defect thus bears not so much upon the government's role in its creation as it does on the nature of the condition itself. The circumstances surrounding the governmental unit's involvement in the creation of a premises defect may be relevant to the issue of the government's knowledge of the defect, but will not serve to transform an otherwise ordinary premises defect into a special one.

*Id*. "The class of special defects contemplated by the statute is narrow." *The Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010). "It does not include common potholes or similar depressions in the roadway." *Paper*, 376 S.W.3d at 766; *Hindman v. State Dep't of Highways & Pub. Transp.*, 906 S.W.2d 43, 46 (Tex. App.—Tyler 1995, writ denied) (observing that special defects do not include "every pothole or bump encountered on a public highway in Texas capable of upsetting a

10

cyclist"). "Rough, uneven asphalt and even potholes are not unexpected and should be within the realm of objective expectations of the ordinary user." *Tex. Dep't of Transp. v. Pierce*, No. 12-19-00260-CV, 2020 WL 500779, at *4 (Tex. App.—Tyler Jan. 31, 2020, pet. denied) (mem. op.); *see Hayes*, 327 S.W.3d at 116. Typically, such irregularities will not present an unusual danger to the traveler. *Paper*, 376 S.W.3d at 766.

Having reviewed all the trial testimony, photographs, and other exhibits, we agree with TxDOT that the subject pothole was at most an ordinary premises defect and not a special defect. The photos of the pothole depict an area of asphalt with an uneven, rough, irregular surface in two areas. The photographs show that the complained-of condition is at the edge of the outside lane, close to the shoulder of the road but still within the lane of travel. The width of the lane of travel is approximately twelve feet wide.

Department of Public Safety (DPS) Trooper Kasey Carrier investigated the accident and took two photographs of the location of Lofton's accident. Trooper Carrier testified that Lofton was traveling eastbound on Interstate 10 in the outside lane of travel. He did not take any measurements that night of the size or depth of the pothole. As usual, he notified dispatch to contact TxDOT concerning the damage to the roadway. Trooper Carrier testified he determined the specific pothole in question by looking for scrapings from the motorcycle on the ground. Prior to

Lofton's accident, Trooper Carrier had been to this area many times for accidents, flat tires or "motorist assists," and he notified communications about problems in the area on multiple occasions. Carrier stated in his opinion that the "amount of risk that this pothole poses to a motorcycle is unreasonable, unacceptable." And he testified that "there are a lot of potholes out there over time [and] that [he had] notified communication to let TxDOT know." However, he admitted that he had never notified TxDOT about the specific pothole involved in Lofton's accident before Lofton's accident occurred.

Tiffany Lofton, Lofton's wife, testified that she took photographs of the potholes the day after the accident. Tiffany explained she knew she photographed the correct pothole because Trooper Carrier told her where it was located. She did not measure the pothole but explained it was "about two of my – both my hands put together." Regarding depth, Tiffany testified her whole index finger could fit in the pothole. While on the witness stand, Tiffany measured her hands and index finger, which measured six inches in width and three and a half inches in depth. Since Trooper Carrier did not measure the pothole in question, Tiffany's testimony is the only evidence concerning the pothole's size.

The existence of a special defect is a question of law, which we review de novo. *City of Dall. v. Reed*, 258 S.W.3d 620, 622 (Tex. 2008). As explained by the Supreme Court, we traditionally distinguish special defects by some unusual quality

12

outside the ordinary course of events. *Id*. Here, the evidence shows the pothole measured approximately six inches in width and three and a half inches in depth. Ordinary drivers in the normal course of driving roadways should expect that normal wear and tear may cause depressions and potholes like the pothole the evidence describes in relation to its size and depth, and we cannot say this pothole was of an "unusual quality outside the ordinary course of events" such as would cause it to be included within the same kind or class of excavations or obstructions that qualify as special defects. *Id*.; *see* Tex. Civ. Prac. & Rem. Code Ann. § 101.022(b). This pothole does not fit within the same class of hazard of an excavation or obstruction as referenced in the TTCA. *Compare Paper*, 376 S.W.3d at 765–66 (holding sunken area on the street that was two inches to a few inches more at its deepest point and located in the center of one lane of traffic was not a special defect), *and Reed,* 258 S.W.3d at 622 (holding that a two-to three-inch difference in elevation between traffic lanes was not a special defect), *and City of El Paso v. Bernal*, 986 S.W.2d 610, 611 (Tex. 1999) (holding that a worn or depressed area of a sidewalk approximately three feet by six feet in size with a depth of three inches was not a special defect), *with Cty. of Harris v. Eaton*, 573 S.W.2d 177, 178–79 (Tex. 1978) (oval-shaped hole six to ten inches deep, and four to nine feet wide, extending across ninety percent of roadway is a special defect), *and City of Weston v. Gaudette*, 287 S.W.3d 832, 838–39 (Tex. App.—Dallas 2009, no pet.) (pothole ten feet in diameter

13

and five to six inches deep, extending the width of one traffic lane is a special defect), *and Morse v. State*, 905 S.W.2d 470, 475–76 (Tex. App.—Beaumont 1995, writ denied) (ten to twelve inch drop off on shoulder of road is a special defect), *and State v. Nichols*, 609 S.W.2d 571, 573 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (caved-in portion of highway three to five feet wide and three to four feet deep, extending across entire highway is a special defect). Since the pothole was not a special defect, section 101.022(b) of the TTCA does not apply and TxDOT did not owe a heightened duty as would apply to an invitee. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.022(b); *Hayes*, 327 S.W.3d at 117.

**Actual knowledge**

We next consider whether Lofton established a claim waived by the TTCA for a premises defect. To establish waiver of immunity for a premises defect claim, Lofton must establish, among other elements, that TxDOT "actually knew of a 'dangerous condition at the time of the accident.'" *Hayes*, 327 S.W.3d at 117 (quoting *City of Corsicana v. Stewart*, 249 S.W.3d 412, 413–14 (Tex. 2008)). Lofton asserts that TxDOT had actual knowledge of the condition because TxDOT was aware that this stretch of road was marred by potholes, TxDOT employees regularly inspected this area and were notified by the Texas Department of Public Safety ("DPS") of potholes in this area, and this location was repaired several times before the accident. Lofton also points to Noel Salac's testimony that he was notified about

14

Lofton's accident around the time it occurred and that he believed TxDOT was aware of the accident.

Noel Salac, a TxDOT assistant area engineer in the Beaumont District at the time of Lofton's accident, testified that two main roles of TxDOT are new construction and maintenance. Salac testified that since this area was past the new construction phase, repairs to this section of the road would be handled by the TXDOT Beaumont maintenance division. When shown the photographs of the area in question, Salac admitted that this area of the roadway had been repaired numerous times. When questioned about whether it would take more than two weeks for the pothole in question to develop, Salac testified that it could develop overnight or even in a few minutes. Salac explained this could occur from water infiltration in the road and expansion from sunlight that could cause a repaired pothole to pop loose. He also testified that a pothole could be repaired and look fine but heavy truck traffic could make the asphalt patch pop loose. Based upon mathematical calculations, Salac testified that on a given day, 12,500 vehicles could have used the lane where Lofton's accident occurred, meaning 125,000 vehicles could have used the lane during any given ten-day period.

Todd Dinger, a TxDOT maintenance section supervisor at the time of Lofton's accident who has since retired from TxDOT, testified that he was head of maintenance in Jefferson County in 2018 and was responsible for Interstate 10. He

15

stated that 50,000 – 80,000 vehicles drive on Interstate10 in Jefferson County on a daily basis. Since it was so heavily travelled, Interstate10 would be visually inspected probably twice a week. Dinger testified that 20–30% of maintenance involves potholes. He discussed TxDOT's "Daily Activity Report" that identified who, what, when and where a maintenance crew went out and how much "cold mix" was used to repair a given number of potholes. Dinger explained that he had seen pothole repairs last two to five years, but he had seen other repairs last only a month or two before requiring further repair. After a repair, someone would drive by and inspect the repair work within two to three days, unless an issue was reported. However, Dinger testified that repairs sometimes fall apart very quickly due to the large volume of 18-wheeler traffic. Based upon the September 21, 2018 Daily Activity Report, TXDOT was last in the area performing repairs on I10 around where Lofton's accident occurred three days before Lofton hit the pothole on September 24, 2018.

We conclude that Lofton's evidence does not establish that TxDOT had actual knowledge of the pothole in question when the accident occurred. *See York*, 284 S.W.3d at 847; *Payne*, 838 S.W.2d at 237. It is not sufficient for TxDOT to merely know of the possibility that a dangerous condition could develop over time. *See Hayes*, 327 S.W.3d at 117 (quoting *Stewart*, 249 S.W.3d at 414–15). "'Awareness of a potential problem is not actual knowledge of an existing danger.'" *Paper*, 376

16

S.W.3d at 767 (quoting *Reyes v. City of Laredo*, 335 S.W.3d 605, 608 (Tex. 2010)). At most, TxDOT arguably knew that the area of the roadway might need to be repaired again, and that it was possible other potholes could develop, but this does not establish actual knowledge of the pothole in question. Even if TXDOT had just previously made a repair to the same pothole, which is unclear on this record, the mere possibility that the pothole might redevelop does not show TXDOT possessed actual knowledge of an existing danger. *Id.* In other words, to prove the actual knowledge element of his premises defect claim, Lofton had to prove that at the time of his accident, TxDOT knew about the dangerous premises condition. *See id.* Since Lofton failed to establish that TxDOT had actual knowledge the pothole existed and posed an unreasonable danger when the accident occurred, Lofton failed to meet his burden to establish that TxDOT's immunity from suit on the premises defect claim had been waived by the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a); *Miranda*, 133 S.W.3d at 228, 232. Having failed to establish a valid waiver, the trial court lacked the authority to exercise subject matter jurisdiction over Lofton's suit. *Id.* We sustain TxDOT's first issue. It is not necessary to address TxDOT's second issue, in which it contends there is no waiver of immunity because the condition did not pose an unreasonable risk of harm. *See* Tex. R. App. P. 47.1.

## CONCLUSION

We conclude that TxDOT established as a matter of law that there has been no waiver of sovereign immunity under the TTCA and that the trial court lacked subject matter jurisdiction. The trial court erred in denying TxDOT's Motion for Traditional and No Evidence Summary Judgment and to Dismiss for Want of Jurisdiction. Accordingly, we reverse the trial court's order denying TxDOT's Motion for Traditional and No Evidence Summary Judgment and to Dismiss for Want of Jurisdiction, we grant TxDOT's Motion for Traditional and No Evidence Summary Judgment and to Dismiss for Want of Jurisdiction, and we render judgment dismissing Lofton's claims against TxDOT with prejudice.

REVERSED AND RENDERED.

W. SCOTT GOLEMON
Chief Justice

Submitted on June 30, 2023
Opinion Delivered October 19, 2023

Before Golemon, C.J., Horton and Johnson, JJ.

18